Aluminum Company of America

*v.*

Clyde Rogers.

364 S.W.2d 358.

(*Knoxville,* September Term, 1962.)

Opinion filed December 14, 1962.

Rehearing Denied February 7, 1963.

R. L. OGLE, SR., Sevierville, for petitioner.

J. C. GAMBLE, Maryville, for respondent.

MR. JUSTICE DYER delivered the opinion of the Court.

Clyde Rogers, age 49 had been employed by the Aluminum Company as a guard for about seventeen years. In his original petition filed October 24, 1958, amended March 13, 1961 against the Company to secure alleged benefits due him under our Workmen's Compensation Statutes he alleged an accidental injury in the lowering of a tight window while on duty alone in a guard station (small building) on March 24, 1958: that as a result of this accidental injury his pre-existing condition of diabetes was materially aggravated and a hypertension arose causing high blood pressure to develop, which later resulted in an aggravation of his heart condition; with the result he had become permanently and totally disabled.

On May 18, 1961 Clyde Rogers died. On June 12, 1961 a motion was made suggesting the death and moving the case be revived in the name of his widow, Callie V. Rogers, as Administratrix, and in her name individually for her use and benefit and the use and benefit of their minor child, Otha Ray Rogers. The Chancellor allowed this motion and on July 7, 1961 an amended and supplemental bill was filed alleging the death was causally connected to the aforesaid injuries and aggravation to his diseased body.

The trial court has made an award for permanent and total disability from March 14, 1958 including full death benefits all not to exceed $11,000.00 and $350.00 for burial expenses. The trial court based this award on a finding Rogers did sustain an accidental injury on March 14, 1958 aggravating and accelerating his pre-existing diseased condition of diabetes, hypertension, varicose veins and heart condition, which conditions became progressively

worse resulting in and contributing to his death by heart attack.

The Company by their first assignment of error alleges the trial court erred in holding they had actual knowledge of the accident complained of so as to excuse Petitioner from giving the notice required by Section 50-1001, T.C.A. The Company alleges they had no notice of this accidental injury of March 14, 1958 until filing of this suit on October 24, 1958.

In his original petition Rogers alleged as follows:

"That he did not give the company any written notice of his accident and injuries for the reason that the company had actual knowledge of said accident and injuries and conditions by reason of their sending him to the First Aid Station and then later sending him to the Blount Memorial Hospital."

In their answer the Company denied they had actual notice of such injury. The Chancellor found the company had notice of Petitioner's accident and injury of March 14, 1958.

Petitioner Rogers testified at the time of this accident he was alone in the guard station, which is a small building or office containing a telephone, desk and chairs. He testified in his effort to close a tight window a pain struck him in the right side and he sunk down into a chair lapsing into unconsciousness. After this testimony the following question was propounded to him and his answer given.

"Q When you regained consciousness what did you do?

"A Well, I got up to the desk—the desk runs one way around this side and then it comes to the corner and

the other one come around right here—and I was laying over on this desk. I got up the water fountain was right behind me and held to this desk and got me a sup of water. The telephone was setting right there on that desk and I just dialed 121, Desk Sergeant, and told him that something had hit me to come up there and I was sick and a vomiting.''

The Desk Sergeant Petitioner called was Harold K. Haun. Sergeant Haun testified Petitioner called requesting him to come over that he was sick, and upon arriving he found Petitioner sitting in a chair. Petitioner informed him he was sick at his stomach and his arms and hips were hurting. In answer to questions Haun testified Petitioner did not say anything to him about injuring himself, or anything about opening or closing a window. Sergeant Haun placed another man at this guard station and carried Petitioner to the Company First Aid Station.

Mrs. Elan Cook was the nurse on duty at the First Aid Station. Mrs. Cook testified Petitioner was brought to the Aid Station by plant car, and walked into the station himself. Petitioner complained of pain in his back, both sides, headaches and he was nauseated. Mrs. Cook took his temperature and blood pressure and upon directions received via telephone from a Company doctor sent Petitioner to the Blount Memorial Hospital. Mrs. Cook reported Petitioner's temperature as taken by her was 97.8 and his blood pressure 230 over 106. In answers to questions Mrs. Cook stated Petitioner made no statements about an accident or any reference to opening or closing a window.

Petitioner was taken to the Blount County Hospital by Howard D. Rudder a guard for the company. Mr. Rudder testified petitioner said little to him, but that he did not

say anything about an accident or lowering a window. Dr. W. C. Crowder was on duty at the hospital and examined Petitioner upon his arrival. Dr. Crowder testified Petitioner complained of pains in his chest, severe headaches and that he suddenly felt faint and had some pain in his chest. Upon being questioned about the matter Dr. Crowder testified that Petitioner did not mention to him anything about an accident or lowering a window.

Dr. Crowder did not see fit to enter Petitioner in the hospital and the Company sent one of its guards Rufus L. Lindsey to take Petitioner home. Guard Lindsey testified on this point as follows:

"Q   As you went up there or any time while you were with him that night, what did he say about what his trouble was, why he was sick, if he was sick?

"A   Well, he tried to get me to let him wait and catch the bus. He said he was feeling all right. I said, 'No, they told me to take you home, and that's what I'm supposed to do.' And he said he was feeling all right. And I said, 'What seems to be your trouble, Clyde?' He said, 'Well,' he said, 'You know I'm bothered with too much sugar or sugar diabetes, whatever—usually I get to feeling better when I take some medicine or get a shot.' And we just went on, and I told him I was going to take him home and that's what I did.

"Q   Did he say anything about getting hurt on the job?

"A   No Sir, he didn't."

The next day Petitioner went to his own physician, Dr. K. O. Rutherford, who placed Petitioner in a local hos-

pital where he remained for about two weeks. Prior to this alleged accident Petitioner had been notified by the Company due to a reduction in personnel that he would be laid off, and in fact Petitioner at the time of the accident was working his last shift. Petitioner did not return to the Company for further employment and the record does not disclose he gave any other notice of this accident other than noted in the evidence above.

Section 50-1001, T.C.A., requires an employee to give written notice of the accident and injury within 30 days on the penalty of having his petition dismissed. The Courts have relieved an employee from the defense of written notice on two grounds, namely; (1) waiver, based on the conduct of the employer, or his representatives in recognition of the liability: and (2) excuse, based on various grounds of inability, or faultless omission of the employee. Knowledge of the accident and injury on the part of the employer and lack of prejudice are elements considered by the courts as affecting the reasonableness of the excuse made, or the justness of the application of the doctrine of waiver. Where the question of notice is raised by the pleadings the burden of showing notice or reason why same was not given is upon the employee. This statute makes the question of reasonablenes of the excuse for failure to give written notice one peculiarly for the trial judge, but the material evidence rule applies to this issue of fact the same as to other issues of fact. *Brookside Mills v. Harrison,* 158 Tenn. 86, 11 S.W.2d 679; *Marshall Const. Co. v. Russell,* 163 Tenn. 410, 43 S.W.2d 208; *York v. Federal Chemical Co.,* 188 Tenn. 63, 216 S.W.2d 725.

In the case at bar the Petitioner Rogers relies as a defense to the lack of written notice, that the Company had

knowledge of the accidental injury and was not prejudiced by failure to receive written notice. Counsel in his brief for Petitioner states on this point of notice as follows:

"The evidence shows that at the time Clyde Rogers had the accident, he called his boss and told him what had happened, 'Something struck me in the back,' or words to that effect. The boss took him to the First Aid Station where a registered nurse for the company took his blood pressure, found it to be 230 over 106; that she put him to bed. She called the company doctor and said company doctor advised her to send him to the hospital. We insist that this was all the notice needed."

When Petitioner called Sergeant Haun he did say, "and told him that something had hit me" but he also said in the same sentence, "to come up there and I was sick and a vomiting." When Sergeant Haun arrived he found Petitioner sitting in a chair and stated Petitioner told him he was sick at his stomach and that his arms and hips were hurting. We do not think this language under these circumstances would convey to a person Petitioner had suffered an accidental injury.

All this evidence viewed in the light most favorable to Petitioner is conclusive of only one fact, that is Petitioner suddenly became ill on the job. In Volume 58, American Jurisprudence, page 832 there is a statement we approve from their article on Workmen's Compensation, to-wit, "But the employer's knowledge of the fact that an employee became ill while at work does not necessarily, of itself, charge the employer with notice that such illness constituted or resulted in a compensable injury."

■ Counsel for Petitioner argues in his brief the Company does not even claim they were prejudiced by failure to receive written notice. Lack of prejudice alone would not be sufficient to excuse notice. *Marshall Const. Company v. Russell,* supra.

The action of the Chancellor is reversed and the cause dismissed.