INTERNATIONAL PLAYING CARD AND LABEL Co. Inc., et al.,
Plaintiffs in Error,

*v.*

· LUCILLE BRIDGES BROYLES, Defendant in Error.

381 S.W.2d 888.

(*Knoxville,* September Term, 1963.)
(May Session, 1964.)

Opinion filed July 15, 1964.

G. EDWARD FRIAR, Knoxville, FRIAR & REYNOLDS, Knoxville, of counsel, for plaintiffs in error.

TOM H. ROGAN, Rogersville, for defendant in error.

MR. JUSTICE HOLMES delivered the opinion of the Court.

This is a Workmen's Compensation case in which the Trial Court awarded compensation for total permanent disability. The employer and its insurance carrier filed a motion for new trial which was overruled and have perfected their appeal and assigned errors. Parties will be referred to hereinafter according to their status in the Trial Court.

The petition for compensation, insofar as material to the issues raised on this appeal, alleges that for a number of years prior to February 12, 1963 the petitioner's employment by defendant required the "constant and continuing receiving and picking up by her with her right hand of printed labels from what is known as a corner machine and from a conveyor belt, the transfer of such labels to her left hand, and the placing of such labels into a banding machine. This work required constant and continuing movements of petitioner's hands and arms thousands of times a day, placing constant strain and

stress on petitioner's shoulders, arms, and hands, fingers, and thumbs."

It is further alleged that in the latter part of 1962 petitioner noted that she was having considerable difficulty with her hands, "that her fingers were stiffening, that, while working, her right thumb was flying out of place, and that pain was developing in her right thumb and the fingers of her right hand and that pain was developing in her left shoulder."

It is further charged that "The constant and continued movements necessary for the receipt of labels from the corner machine and conveyor belt and the transfer of same to the banding machine caused and then worsened, added to, and aggravated the pain in her right hand and left shoulder, and the intense pain, stiffness of the fingers, and flying out of joint of the right thumb culminated on February 12, 1963 in petitioner becoming unable to proceed with her duties."

The petition then charges that petitioner sustained accidental injuries to her right hand and thumb, and fingers thereof and to her left shoulder, resulting in lessened facility of these various parts of her anatomy, making it necessary for her to cease work on February 12, 1963 and that, by reason of the combined injuries, she is totally and permanently disabled. It is alleged that such total permanent disability resulted from any injury or injuries suffered by her in the course of her employment and that "her employer had actual knowledge of petitioner's injuries and resulting condition" and that she is entitled to recover under the Workmen's Compensation Act.

The answer of the defendant denies that petitioner sustained any accidental injury arising out of and in the course of her employment by the defendant, denies that any of the disabilities claimed by petitioner were brought about by an accident occurring in the course of her employment. The answer further avers "The defendant would further show that the petitioner did not give any notice of any accident or injury within the meaning of the statute."

The defendant further denies that it had actual knowledge of petitioner's injuries and condition and denies that she has sustained any compensable injury.

The record shows that in December 1962 petitioner went to see a doctor because of her condition. The doctor described her condition at that time as follows:

"The primary underlying condition was a hypotrophic type of arthritis with some acute inflammation, especially of the right hand and thumb, and left knee * * * I believe that was the worse (sic) one, and also bursitis * * * I'd better check to be sure * * * it was a right sub deltoid arthritis, right shoulder. Those were the chief complaints, although there were complaints of pain and arthritis of the hip joint."

This doctor further testified that in December 1962 he diagnosed petitioner's difficulty as "chronic hypertrophic arthritis with acute flare up". She was again seen on January 9, 1963 by her doctor, who testified at that time she was still having some bursitis but that her chief complaint was her hand, especially her finger joints and thumb. This doctor further testified that in his opinion petitioner's arthritic condition was aggravated by

the constant use of petitioner's hands and arms required by her work.

On the issue of notice raised by the pleadings of the parties, the petitioner testified that about the middle of December 1962:

"I told Mr. Tieke there one day, I showed him my thumb, how it was swollen, how it was flying out of place, and then I told Mr. Geiger that it looked like the pain was getting so severe that I was giving him 2 weeks notice, but I didn't know definitely when I would quit because I * * * I said I wanted to work as long as I could."

She testified that Mr. Geiger was the President of the defendant company and Mr. Tieke was a high official of that company.

At another point in her testimony, petitioner described the notice she gave the defendant company as follows:

"I told Mr. Geiger that I was having so much pain that I was giving the 2 weeks notice that I was quitting because I didn't want to just walk out, and I said, I want to stay if I can, but I said I want to give you a notice in case it gets so bad I can't stay any longer".

On each occasion that petitioner was asked questions relating to notice to her employer of her injury, she testified that she advised the officials of the defendant company of her condition and of the fact that she was going to have to quit work at some indefinite time in the future because of her condition. She testified that because of the pain she was suffering she was forced to stop working on February 12, 1963.

The assignments of error and brief filed on behalf of the defendant contains nine assignments of error. The petitioner has moved to strike defendant's assignments of error and brief because they are too general to be considered and do not comply with the requirements of Rule 15 of this Court.

An examination of defendant's assignments of error and brief shows that it substantially complies with the requirements of Rules 14 and 15 of this Court. Therefore, the motion to strike the assignments of error and brief is overruled.

The second and seventh assignments of error relate to the question of whether or not the notice required by T.C.A. secs. 50-1001 and 50-1002 was given the defendant.

Assignment of Error Number Two states:

"The proof failed to show that the plaintiff gave notice to the defendants of injury or accident."

Assignment of Error Number Seven states:

"The proof, as introduced, does not comply with the statutes of Tennessee with reference to Workmen's Compensation awards either with reference to accident and the definition of accident or with reference to notice and the definition of notice."

In the recent case of *Aluminum Co. of America v. Rogers*, 211 Tenn. 187, 364 S.W.2d 358, this Court had occasion to consider the requirements of the sections of the Workmen's Compensation Act relating to the necessity for notice to the employer of the accident and injury. In that case, at 193 of 211 Tenn., 364 S.W.2d p. 360, the Court, speaking through Mr. Justice Dyer, stated:

"Section 50-1001, T.C.A., requires an employee to give written notice of the accident and injury within 30 days on the penalty of having his petition dismissed. The Courts have relieved an employee from the defense of written notice on two grounds, namely; (1) waiver, based on the conduct of the employer, or his representatives in recognition of the liability: and (2) excuse, based on various grounds of inability, or faultless omission of the employee. Knowledge of the accident and injury on the part of the employer and lack of prejudice are elements considered by the courts as affecting the reasonableness of the excuse made, or the justness of the application of the doctrine of waiver. Where the question of notice is raised by the pleadings the burden of showing notice or reason why same was not given is upon the employee. This statute makes the question of reasonableness of the excuse for failure to give written notice one peculiarly for the trial judge, but the material evidence rule applies to this issue of fact the same as to other issues of fact. *Brookside Mills v. Harrison,* 158 Tenn. 86, 11 S.W.2d 679; *Marshall Const. Co. v. Russell,* 163 Tenn. 410, 43 S.W.2d 208; *York v. Federal Chemical Co.,* 188 Tenn, 63, 216 S.W.2d 725."

In the present case, under the averments of the petition for compensation, "actual knowledge of petitioner's injuries and resulting condition" are relied upon as the excuse for the failure to give the written notice provided for by T.C.A. sec. 50-1001. This averment of the petition is denied by the answer of defendant, and the answer further states that petitioner "did not give notice of any accident or injury within the meaning of the statute." Thus, the issue as to notice was properly

raised by the pleadings and the burden of showing notice, or reason why same was not given, is upon the employee.

At no point in petitioner's testimony did petitioner contend she gave actual notice to the defendant, or any of its representatives, of the fact that she claimed to have sustained *an accidental injury,* or that she claimed her condition was the result of any injury arising out of her employment. Her testimony shows that about the middle of December 1962 she advised officials of the defendant company of her condition and showed them her hand and thumb.

In his memorandum opinion, the Trial Judge stated:

"Mrs. Broyles testified that she told Mr. Tieke about her condition,' etc., and told the people that she was going to give 2 weeks notice, and that if she wasn't better by reason of her condition she was going to have to quit, she just couldn't carry on the work."

Mr. Tieke testified as a witness for the defendant and stated that one of his duties was to receive and supervise the collection and keeping of records with reference to injuries sustained at the defendant's plant. He further testified:

"Q. As a matter of fact, did you know at all, Mr. Tieke, * * * tell the Court whether or not you knew that Mrs. Broyles was claiming to be injured up until the time you received the summons for this suit?"

"A. No, sir, I didn't."

The record shows the summons was issued on April 18, 1963 and was served on R. J. Tieke on April 23, 1963.

In the Rogers case, the defendant had actual knowledge of the fact that petitioner was "sick and vomiting" while

acting in the course of his employment by the defendant, and petitioner was taken to the hospital by an employee of the defendant. There, it was held that this information would not give knowledge that petitioner had suffered an accidental injury.

In the present case, petitioner's notice to her employer was that she was going to have to quit work in the reasonably near future because of the pain she was suffering. At no time does it appear that she gave any notice that she claimed there was any connection between her employment and her arthritic condition, nor did she ever testify she advised any representative of the defendant that she had sustained an accidental injury.

Another very recent case in which this Court was called upon to dismiss a petition for Workmen's Compensation because of a failure to give the notice of accident and injury required by the statute is *Smith v. Tennessee Furniture Industries, Inc.*, 212 Tenn. 291, 369 S.W.2d 721. In that case, when asked by the Court, "Who did you tell out there that you had injured your back?" the petitioner replied, "I don't know. I just told them I got hurt, my back and by stomach, I didn't say what way wrong, *what caused it*. I went to the doctor and the doctor told me what was wrong with me."

In that case, the Court reviewed in detail all of the evidence relating to notice of accident and injury and held that the fact the employer had knowledge that the petitioner became ill while at work was not knowledge or notice that petitioner claimed to have sustained an accidental injury.

Both the Smith and Rogers cases review the earlier cases relating to the requirement for notice of

accident and injury under our Compensation Act. In the light of those decisions, in the present case, it is clear that the assignments of error raising the question of notice of an alleged accident must be sustained. In this case petitioner gave her employer notice that she was going to have to quit work because of the condition of her hand and thumb, just as in the Smith and Rogers cases the employees gave notice of their conditions which required that they be taken immediately from their employer's place of business. In the case at bar, as in those cases, the employee did not convey notice of a claim that the employee's condition was the result of an accidental injury arising out of the employment.

In making his findings in this case, the Trial Judge stated that:

"the purpose of the Compensation Law is to let the employer, who has gotten the benefit of the service of the employee, let them contribute toward the maintenance of the employee who is disabled, and down-and-out before charity, or before some other method of compensation steps in to see that life is made in some degree reasonably happy."

In *Smith v. Tennessee Furniture Industries, Inc.,* supra, this Court has fully stated the purpose of the Workmen's Compensation statute. It is not necessary here to reiterate what was said there.

In view of our conclusion that the decision of the question of notice is determinative of this case, it is not necessary to consider the other assignments of error. The judgment of the Trial Court is reversed and the cause is dismissed.

## On Rehearing

A sincere petition to rehear has been filed in this case in which it is urged that we overlook the holdings of this Court in *Powers v. Beasley,* 197 Tenn. 549, 276 S.W.2d 720, *Charnes v. Burk,* 205 Tenn. 371, 326 S.W.2d 657, and *Brown Shoe Company v. Reed,* 209 Tenn. 106, 350 S.W.2d 65. These cases were examined by us prior to reaching the conclusions stated in the original opinion.

Having re-examined the matter, we have concluded that we were correct in holding that the decision of the present case is controlled by the rules stated in *Aluminum Company of America v. Rogers,* 211 Tenn. 187, 364 S.W.2d 358, and *Smith v. Tennessee Furniture Industries, Inc.,* 212 Tenn. 291, 369 S.W.2d 721, and the cases cited therein. Therefore, the petition for a rehearing in this case is denied.