**Emma Lee McKINNEY, Appellant,**

v.

**The BERKLINE CORPORATION, Appellee.**

Supreme Court of Tennessee.

Jan. 7, 1974.

Jim W. Stambaugh, Morristown, for appellant.

Gary E. Brewer, Charles R. Terry and Associates, Morristown, for appellee.

OPINION

ERBY L. JENKINS, Special Justice.

This is a workmen's compensation case from the Circuit Court of Hamblen County.

The plaintiff brought suit on March 23, 1973, against her employer, The Berkline Corporation, alleging that she was injured in the line of duty on June 21, 1972, while lifting some sofa backs. She did not seek medical advice or make complaint on that date, but reported to Betty Jean Crigger, a nurse for the defendant corporation on July 10, 1973, that she had a catch in her hip.

The defendant, for answer to the plaintiff's petition says that Mrs. McKinney was not injured in the line of duty; further, that she did not give notice of a job related injury as required by T.C.A. § 50–1001:

"Notice of Injury and Claim for Compensation.—Every injured employee or his representative shall, immediately upon the occurrence of an injury, or as soon thereafter as is reasonable and practicable, give or cause to be given to the employer who has not actual notice, written notice of the injury, and the employee shall not be entitled to physician's fees nor to any compensation which may have accrued under the provisions of the Workmen's Compensation Law from the date of the accident to the giving of such notice, unless it can be shown that the employer had actual knowledge of the accident; and no compensation shall be payable under the provisions of this law unless such written notice is given the employer within thirty (30) days after the occurrence of the accident, unless reasonable excuse for failure to give

such notice is made to the satisfaction of the tribunal to which the claim for compensation may be presented."

After a hearing, the trial judge sustained the plea of the defendant and dismissed the plaintiff's petition, holding that the plaintiff did not comply with the above section and therefore, the defendant had not received the necessary statutory notice.

The plaintiff has appealed to this Court, and the question to be decided is whether or not the plaintiff gave notice as required by the above statute, or gave a reasonable excuse for failing to do so.

Some of the pertinent facts should be discussed in order to decide this question. Before detailing some of the facts it must be noted that it is well settled that the trial judge had a wide latitude of discretion in the construction of this statute, and that the burden is on the plaintiff when the question of notice is raised as a defense.

This Court, in Aluminum Co. of America v. Rogers, 211 Tenn. 187, 364 S.W.2d 358 (1963), speaking through Justice Dyer, discussed in detail the requirements of T.C.A. § 50–1001, stating:

"Section 50–1001, T.C.A., requires an employee to give written notice of the accident and injury within 30 days on the penalty of having his petition dismissed. The Courts have relieved an employee from the defense of written notice on two grounds, namely; (1) waiver, based on the conduct of the employer, or his representatives in recognition of the liability: and (2) excuse, based on various grounds of inability, or faultless omission of the employee. Knowledge of the accident and injury on the part of the employer and lack of prejudice are elements considered by the courts as affecting the reasonableness of the excuse made, or the justness of the application of the doctrine of waiver. Where the question of notice is raised by the pleadings the burden of showing notice or reason why same was not given is

upon the employee. This statute makes the question of reasonableness of the excuse for failure to give written notice one peculiarly for the trial judge, but the material evidence rule applies to this issue of fact the same as to other issues of fact."

The plaintiff testified that she was injured on June 21, 1972, while lifting sofa backs. She did not seek medical aid at that time. After returning from vacation, during which time the defendant was apparently closed, she went to the first aid station and reported to a Mrs. Crigger, a nurse employed by the defendant company, that she had a catch in her hip, but did not tell the nurse that she had hurt her back or hip on the job. Apparently, from the record, the employees reported to the first aid station for any injury or complaint, whether work related or not. The plaintiff stated that the nurse made her an appointment with an orthopedist. She did not keep this appointment, but went to Doctors Hospital in Morristown, where she was hospitalized on Monday following July 10th. Later she was transferred to a Knoxville hospital where she remained for two weeks.

Some of the testimony pertinent to her claim will be noted. This record has been read and re-read in the light of the fact that the courts should construe the Workmen's Compensation Act liberally in favor of the employee, realizing however, that the burden of showing that the required notice to the employer of an accidental injury was given or reason why notice was not given, is upon the employee claiming workmen's compensation.

Mrs. McKinney testified in part as follows:

"Q.   And just tell the Court what happened?

"A.   Well, I reached down to pick them up, to put them up on my table, to pre-sew them, and then when I did stoop over, I got a catch in my hip.

Well, I didn't think anything at the time, but it just wouldn't leave me, and I just kept getting worser, so I just kept on, because I wanted to keep my job, I was living by myself at that time and had my mobile home, and I wouldn't say anything, because I was afraid they might accidentally lay me off or something. So, I went on, and on vacation, I was sick, and my daughter come up and got me, and I went back in the 10th of July, when we went back on Monday, and I was just suffering so bad, I went to the first aid, and they called Dr. Gutch for me."

. . . . . .

"Q. What did you tell them?

"A. I just told them that I had something wrong with my hip, and they 'applied' I needed a bone specialist, and that I needed to go see Dr. Gutch.

"Q. Did you tell them where you got something wrong with your hip?

"A. Well, I just told them that I had a catch in it like, and that was all that was said.

"Q. That was all that was said, you told them you had a catch?

"A. Yes."

. . . . . .

"Q. Going back to June 21st, did you tell your supervisor, Mr. Rice, that you had hurt your back?

"A. No, I did not.

"Q. Did you tell anybody else in a supervisory capacity?

"A. No, sir, I just got up and went in First Aid.

"Q. Did you go in First Aid on the 21st?

"A. No, the 10th.

"Q. You didn't seek the first aid attention until the 10th of July, after you had come back from your vacation?

"A. No sir.

"Q. Over the 4th of July holiday?

"A. That's right.

"Q. And when you went in and talked to the nurse or nurses in there in the first aid station, did you tell either nurse that you had had an injury to your back?

"A. Well, I just told her that I had a catch in my hip. It started in my hip.

"Q. And you said nothing to them about having an injury on the job?

"A. No, I did not, because I didn't think it was anything, you know, too important."

. . . . . .

"Q. And when you went back to Berkline, Mrs. McKinney, when you went back to pick up these forms, did you tell them that you had hurt your back while working at Berkline?

"A. No, sir, I did not.

"Q. Have you ever told anyone at Berkline that you injured your back while working there for them?

"A. No, I didn't tell anyone up there, no.

"Q. When you filled out your group insurance papers, or were talking with them up there, they asked you, did they not, if you were injured on the job?

"A. No sir.

"Q. They didn't ask you that?

"A. No, they did not.

"Q. Regardless of whether or not they asked you, did you tell them?

"A. No sir, I did not."

The nurse, Betty Jean Crigger, testified:

"Q. Mrs. Crigger, do you have an independent recollection, or any notation on your logs there, where Mrs. McKinney came to your station and told you anything about a problem she was having with her hip or back?

"A. You mean on any particular day, or just—

"THE COURT: July 10th.

"A. July 21st?

"Q. July 10th.

"A. I do not have a notation on this, sir, because she came to me on Monday morning, stating that she had a catch in her hip, and she had had it about a week, and it had gotten worse over the weekend, and I asked her, which we always do, 'have you hurt yourself,' and 'no,' she thought it might be arthritis. I said, 'then, I strongly suggest that you see the doctor,' and I told her I would make an appointment with anyone, you know, and of course, as we suggest, cut out the middle man, if you've got bone problems, go to a bone man. I don't recall making the appointment, but if she said that I did, I will not state that I didn't, because—

"Q. Do you frequently do that?

"A. Yes sir, day in and day out, dentists and chiropractors and any --- if they request us to call their personal physician and make an appointment, we do this. We just don't treat service connected injury. We treat any injury. If they are hurt at home, we treat them there. They often come to us for treatment.

"Q. Mrs. Crigger, this is very important. Did Mrs. McKinney ever tell you that she had injured her back or her hip or anything at work during this period of time?

"A. No sir."

The record reflects that the Court throughout the trial was concerned about notice, remarking at one time during the testimony:

"The only claim she makes even getting close to a notice is that she says she went into the first aid there and said that her back was hurting or something to that effect, or had a catch in her back."

Finally, the court said:

"Well, Mrs. McKinney, I just find that you didn't give notice in time, ma'am. I'm very sorry, and time has run out for filing, and you just can't recover, because you didn't give them notice, and under the law they were entitled to notice, I'm just sorry. I'm sorry you weren't able to know what you were supposed to do, and I'm sorry you were hurt, but there is nothing I can do to help you on the thing, so you may take your appeal, if you want to."

While it is true that Berkline Corporation knew the employee was ill, mere knowledge of an employee's illness, unless it is obvious that a work related injury has occurred, is insufficient to charge the employer with knowledge that the employee sustained a work related injury. Aluminum Co. of America v. Rogers, supra; International Playing Card & Label Co., Inc. v. Broyles, 214 Tenn. 530, 381 S.W.2d 888 (1964).

The Workmen's Compensation Law was enacted initially to protect the worker and has been liberally construed in his favor, as aforesaid. Safeguards, such as the statute in question, have been established to protect industry. Worker and employer alike benefit from these safeguards.

This plaintiff apparently told the truth in her testimony. Our sympathies, if we were permitted such, lie with the plaintiff,

but standards, as stated, have been set by this statute and decisions of this Court in its construction that must be complied with, realizing that industry as well as the employee must have certain protection under the Workmen's Compensation Act. It provides the funds to protect the worker. It could not survive unwarranted claims. The worker could not survive without industry. It is that simple.

The plaintiff was given every opportunity to state that she was injured on the job and that she so reported to her employer in questions by her own attorneys, by cross-examination, and by the trial judge, so there can be no lingering doubt in the Court's mind that the trial judge in denying the petition acted with great caution and wisdom.

■ We find that the plaintiff did not give her employer legal notice as required in T.C.A. § 50–1001, and therefore, the action of the trial court is affirmed.

DYER, C. J., McCANLESS and FONES, JJ., and LEECH, Special Justice, concur.