AETNA CASUALTY & SURETY CO., Appellant,

v.

Ollie K. LONG, Appellee.

Supreme Court of Tennessee.

Aug. 7, 1978.

Robert R. Campbell, Knoxville, for appellant.

Joel E. Pearman, Harriman, for appellee.

## OPINION

W. WAYNE OLIVER, Special Justice.

In this workmen's compensation case, in which the trial court found and held that the plaintiff is totally and permanently disabled by asthmatic bronchitis resulting from the conditions of her employment and

awarded benefits accordingly, the defendant urges upon us in this appeal that there was no material evidence to sustain the judgment of the trial court (1) that the plaintiff's disease was so closely related to one of the statutory occupational diseases as to render it compensable under the Workmen's Compensation Law of this State, (2) that the plaintiff's disease met the statutory criteria of an occupational disease, and (3) that the plaintiff's claim was not barred by the notice and statute of limitations provisions of our Workmen's Compensation Law.

Of course, the defendant's insistence makes it incumbent upon us to determine whether there is any material evidence in the record to sustain the trial court's findings and judgment. The extent of this Court's authority in reviewing questions of fact involved in a workmen's compensation case here on appeal is to determine whether any material evidence appears in the record justifying the findings and judgment complained of. *Davis v. Gulf Insurance Group,* 546 S.W.2d 583 (Tenn.1977).

The plaintiff, Mrs. Ollie K. Long, 54 years of age, testified she worked as a backwinder at Fibron, Inc. from about mid-August of 1972 until January of 1975; that her work involved quality control of plastic yarn and consisted in operating machines to rewind large spools of second quality yarn ". . . and try to get first quality out of them if I could"; that she was exposed to dust produced by the yarn with which she was working; and that a compressed air hose was used to clean the machines each time a package of yarn was removed and this process blew dust all over her face and clothing. She said her health was good when she began working at Fibron, Inc.; that "around '73, I think it was. Or '74. I don't know exactly the date" she "just suddenly accumulated a cough and that sneezing" and began experiencing difficulty in breathing, and this condition gradually became worse until she quit about January 6, 1975, because her request to transfer to the less dusty "packout" department was refused. "Well, in '75, when I started back to

work [after Christmas vacation], they had hired another girl in there—She had previously worked there and they had fired her—and they brought her back in and put her in packout. She knew how to run the backwinding where I had worked. They put her up on the packout instead of changing me. And I told my supervisor that it wasn't fair. And he said if I didn't like what he did, I could go home. And I walked out."

On cross-examination she said that she first learned she had bronchial asthma when she went to see Dr. Nat Swann at the Newell Clinic in Chattanooga about April 14, 1973. She said that initial visit to Dr. Swann was when she first started having breathing difficulty, that she continued to see him until she quit her job, and that he hospitalized her two or three times because of her breathing problem.

Further, she stated she began smoking when she was 13 or 14 years old and had never stopped, notwithstanding Dr. Domm (Sheldon E.) had advised her to do so. In addition to Dr. Swann and Dr. Domm, she had also seen Dr. I. M. Cox of Rockwood in regard to her condition.

Mrs. Long testified that, although in October or November of 1974 she suffered a rib fracture when she fell over a box and her supervisor took her to the company doctor, she never told anyone at Fibron, Inc. about her lung condition, stating ". . . they knew about it, because I had been excused from a staff meeting in the quality control office one time because I could not stop coughing for the dust." She testified no one has ever told her that her bronchial asthma is related to the working conditions at Fibron.

On cross-examination she reiterated that she never at any time told any of her bosses at Fibron, Inc. that the dust was causing her breathing and coughing problems, either while she was working there or after she quit, saying she assumed they knew it was the dust that was causing her coughing. But she admitted this was only an assumption and that she did not know they knew that. And she explained that the

reason she did not so inform the company officials, although she knew breathing the dust was causing those conditions, was because she loved her job and did not want to quit and needed to work, "And I was also afraid they would lay me off if I told them."

Testifying by deposition given on June 3, 1976 (Exhibit 2), Dr. Isham M. Cox, a general practitioner in Rockwood, Tennessee, stated, upon examination by the plaintiff's counsel, that he first saw Mrs. Long on June 17, 1975, and found that she had an acute case of asthmatic bronchitis which she said she had had for some time; that she gave him no other personal history and told him nothing about the history of her working conditions; that asthmatic bronchitis is a chronic lung disease caused by "irritants in the lung or in the system producing wheezing, shortness of breath and inability to maintain good respiratory function. It can be caused from many things"; that he had seen Mrs. Long several times since her initial visit, had hospitalized her on occasions, had treated her with different bronchial dilators, and that her condition had not improved; and that she is a complete respiratory cripple incapable of doing any work and is 100 percent disabled.

Responding to a hypothetical question briefly outlining the nature of Mrs. Long's work and the associated dust, essentially in accordance with her description, Dr. Cox said her exposure to the dust "could be" the cause of her condition, "Yes, that can cause it." Persisting, plaintiff's counsel asked Dr. Cox "Is it your opinion that this condition could well have caused it?", to which the doctor replied, "It could well have caused it." Pressing the point, counsel asked, "Doctor, what is your opinion about the cause of this problem?" He replied, "I don't find any other condition in her history that would produce this." (As noted, however, Dr. Cox had already testified that Mrs. Long gave him no history except that she had had asthmatic bronchitis for some time, and told him nothing about her working conditions.)

Dr. Cox was asked whether the plaintiff's condition has "similar pathological effects and affects the lung as silicosis would," and his answer was "Similar, not exactly like it." On cross-examination, he agreed that silicosis is a disease caused by the inhalation of free silica or silica particles into the lungs, and that this can result in a fibrotic or nodule condition developing in the lungs, reducing the elasticity of the lungs and causing respiratory impairment; and that the pathological description of asthmatic bronchitis is different from silicosis. He said x-rays taken when the plaintiff was in the hospital with asthmatic bronchitis showed her lungs to be clear. He further testified that bronchial asthma is a seasonal allergic condition caused by "pollens and things," where as "Asthmatic bronchitis in contrast can come on any time that there is a favorable situation in the system whereby the lungs act up. It can follow a cold or pneumonia or be associated with them"; that "Lots of things can cause it. . . . Being allergic to your own germs that are causing a respiratory infection. . . . Also working around dusty areas could predispose to this"; that when he referred in his testimony to irritants in the system he meant "colds and respiratory infections being associated with it"; that it can be caused by infection, "Yeah, you can be allergic to the bug whether it be a virus or bacteria that's causing your respiratory infection. You can be allergic to that"; and that breathing cigarette smoke "can" cause it, but said he did not know whether or not Mrs. Long smokes.

Asked hypothetically whether smoking a pack of cigarettes a day from the time she was 13 years of age could be a cause of her asthmatic bronchitis, Dr. Cox said, "It could, it wouldn't necessarily have to. Everybody that smokes a pack of cigarettes from age 13 won't get that, they'll get emphysema more than likely." (Mrs. Long told Dr. Sheldon E. Domm, to whom she was referred by Dr. Cox on another matter, that she had smoked a pack a day for 40 years. Exhibit 5.)

Still under cross-examination, Dr. Cox was asked and testified:

"Q I take it as far as the breathing of the dust in Mrs. Long's work, I take it your answer there is the same it could be but you're not necessarily saying that it was?

A That's correct.

Q As to whether it was smoking or breathing dust at work or what it might be you can't just pick out and say it was one of these and not the other?

A No, I can't."

The doctor also stated that the plaintiff has hypertension, arthritis of the spine and obesity. (Dr. Domm's report, Exhibit 5, states that she weighs over 200 pounds.)

On re-direct examination, when asked about the physical effects of silicosis, Dr. Cox said "Now, we're talking about two different things." Under further questioning he said the particles breathed in over a period of time by silicosis victims will eventually cut the lungs and cause them to bleed and hemorrhage, that they have a cough, difficulty in breathing and reduced chest movement; and that Mrs. Long has some reduced chest movement, a severe cough and great difficulty in breathing.

Dr. Sheldon E. Domm, a thoracic surgeon of Knoxville, said in a letter to the plaintiff's attorney, included in his reports concerning the plaintiff (Exhibit 5), that he was unable to give an opinion as to the significance of inhaling plastic dust particles as related to her condition, stating that it would be difficult for him to make any such evaluation.

The plaintiff called her daughter and son-in-law, with whom she lived in Chattanooga while she was employed at Fibron, Inc. Her daughter testified about seeing the dust on the plaintiff's clothes, which she washed during that period. Her son-in-law said he worked at Fibron, Inc. for a year while Mrs. Long was employed there and described the dusty conditions where she worked. He testified he had known her about 15 years; that as far as he knew she had no persistent cough and was in good health when she began working at Fibron; and that while she was employed there he noticed that "she was getting short-breath-ing, and she was having real bad coughing spells."

■ From this review of the evidence certain important considerations emerge. Asthmatic bronchitis, with which the plaintiff is afflicted to a degree rendering her totally and permanently unable to do any work, is not one of the statutorily defined occupational diseases within the meaning of the Workmen's Compensation Law. TCA § 50–1101. Upon this record, we find it unnecessary to reach the issue of whether asthmatic bronchitis is so closely related to one of the diseases listed in the statute as to be properly classifiable as "occupational," and we do not decide that question.

■ However, even if it be assumed that this disease may be so classified, insurmountable obstacles preclude recovery of benefits by the plaintiff. There is no material evidence that her asthmatic bronchitis arose out of and in the course of her employment at Fibron, Inc. in accordance with the imperative standard of proof required by TCA § 50–1101. This Court has long recognized that etiology of disease is the special province of trained professionals. Medical causation and the permanency of an injury must be established by expert testimony in workmen's compensation cases. *Employers Insurance Company of Alabama v. Heath*, 536 S.W.2d 341 (Tenn. 1976). "The increasing tendency to make awards unsupported by medical testimony should not be allowed to obscure the basic necessity of establishing medical causation by expert testimony in all but simple and routine cases—and even in those cases such evidence is highly desirable." *Neas v. Snapp*, 221 Tenn. 325, 426 S.W.2d 498 (1968); *American Enka Corporation v. Sutton*, 216 Tenn. 228, 391 S.W.2d 643 (1965).

In *American Insurance Company v. Ison*, 519 S.W.2d 778 (Tenn.1975), Mr. Justice Brock wrote for the Court:

"[T]o establish that the occupational disease 'had its origin in a risk connected with the employment and . . . flowed from that source as a natural consequence . . .' medical experts or

other suitable expert testimony is required because the conclusions called for can result only from expert training and education not to be found in laymen such as judges."

As we have seen, Dr. Isham M. Cox, who testified by deposition as a witness for the plaintiff, was the only medical expert who undertook to give an opinion as to the causation of her asthmatic bronchitis. But his testimony on that subject, summarized above, very plainly was only tentative and speculative. Mrs. Long told him nothing about her working conditions. Testifying hypothetically, Dr. Cox said her exposure to the dust "could be" the cause of her condition, "can cause it," "could well have caused it." Specifically pressed for an opinion about the cause, Dr. Cox said he found no other condition "in her history that would produce this," although he said she had given him no history except that she had had that disease for some time. He did not know whether Mrs. Long smokes, but answered a hypothetical question that smoking a pack of cigarettes a day from the time she was 13 years of age "could" be a cause of that disease, but said that wouldn't necessarily cause it; that while breathing the dust in her work could be the cause, he was not necessarily saying that it was; and that whether it was smoking or breathing dust at work "or what it might be," he could not say the cause was one and not the other.

▆ If the cause of the injury in question is a matter of speculation it is not compensable. "It is . . . settled law that there must be a causal connection between a workman's accidental injury . . . and the nature of his employment." *McCann Steel Co v. Carney*, 192 Tenn. 94, 100, 237 S.W.2d 942, 944 (1951); *Workman v. General Shoe Corporation*, 196 Tenn. 290, 295, 265 S.W.2d 883 (1954); *Neas v. Snapp*, 221 Tenn. 325, 426 S.W.2d 498 (1968). See also *American Insurance Company v. Ison*, supra; *American Insurance Company v. Ison*, 538 S.W.2d 382 (Tenn.1976).

But beyond all of this, it is uncontradicted that the plaintiff Mrs. Long never gave any notice of any kind to her employer as required by TCA § 50–1107, which provides as follows:

Notice of contraction of disease and claim for compensation—Exception.— Within thirty (30) days after the first distinct manifestation of an occupational disease the employee, or some one in his behalf, shall give written notice thereof to the employer in the same manner as is provided in the case of a compensable accidental injury.

This section shall not apply to claims for total disability or death due to coal worker's pneumoconiosis.

As stated in this statute, the notice required in an occupational disease case is the same as that required in a case of accidental injury. *Wilson v. Van Buren County*, 196 Tenn. 487, 268 S.W.2d 363 (1954).

The notice requirement applicable in injury cases is set out in TCA § 50–1001 as follows:

Notice of injury and claim for compensation.—Every injured employee or his representative shall, immediately upon the occurrence of an injury, or as soon thereafter as is reasonable and practicable, give or cause to be given to the employer who has not actual notice, written notice of the injury, and the employee shall not be entitled to physician's fees nor to any compensation which may have accrued under the provisions of the Workmen's Compensation Law from the date of the accident to the giving of such notice, unless it can be shown that the employer had actual knowledge of the accident; and no compensation shall be payable under the provisions of this law unless such written notice is given the employer within thirty (30) days after the occurrence of the accident, unless reasonable excuse for failure to give such notice is made to the satisfaction of the tribunal to which the claim for compensation may be presented.

▆ The judgment of the trial court in this case recited that the plaintiff's action was not barred by the statutory notice provisions of the Workmen's Compensation

Law. This Court is not bound by the conclusions drawn by the trial court from undisputed facts. *Wilson v. Van Buren County*, supra.

This plaintiff was not incapacitated from work when she left the employment of Fibron, Inc. She testified she quit her job because her request for transfer to another department was refused. Although she believed, she says, that her cough and breathing difficulty were caused by the dust from the plastic yarn she worked with, she never at any time complained to any of her superiors about the dust nor told anyone in the company that it was adversely affecting her health in that way, notwithstanding she said she first consulted Dr. Nat Swann on April 14, 1973, and first learned of her asthmatic condition and continued to see him until she quit her employment and he hospitalized her two or three times because of her breathing problem. Even after she "walked out" and left her employment about January 6, 1975, and even after she first consulted Dr. Cox on June 17, 1975, when he found she was suffering from asthmatic bronchitis, by her own admission she never gave the company any notice of any kind that her health had been undermined by her working conditions.

■ In its answer to the plaintiff's complaint the defendant asserted that her claim was barred by her failure to comply with the statutory notice requirements of the Workmen's Compensation Law. It is not required that a petition or complaint seeking workmen's compensation benefits must affirmatively allege that the statutory notice was given, nor that a reason for not giving it be stated, because failure to give the required notice is a matter of defense. *Greener v. E. I. Du Pont De Nemours & Co.*, 188 Tenn. 303, 219 S.W.2d 185 (1949). But when failure to give notice is pleaded, as here, the burden is on the claimant to prove it was given, or why it was not. *International Playing Card & Label Co., Inc. v. Broyles*, 214 Tenn. 530, 381 S.W.2d 888 (1964).

There is nothing whatever in this record to establish that the plaintiff's employer, Fibron, Inc., ever had any knowledge that her health was being affected or that she contracted a disease as a result of the dust where she worked. Upon this record the plaintiff's excuse for keeping quiet about her coughing and breathing problem and her working conditions before she quit her job is patently unacceptable. There is no perceivable excuse for her failure to give notice to the company after Dr. Cox found and advised her she had asthmatic bronchitis, and she claims none.

■ The law is settled in this State that the giving of the statutory notice to the employer is an absolute prerequisite to the right of an employee to recover compensation under the Workmen's Compensation Law, unless the employer has actual knowledge of the employee's injury or waives notice thereof, or unless the employee had a reasonable excuse for failure to give notice. *Black Diamond Collieries v. Deal*, 144 Tenn. 465, 234 S.W. 322 (1921); *Brookside Mills v. Harrison*, 158 Tenn. 86, 11 S.W.2d 679 (1928); *Hartwell Motor Co. v. Hickerson*, 160 Tenn. 513, 26 S.W.2d 153 (1930); *York v. Federal Chemical Co.*, 188 Tenn. 63, 216 S.W.2d 725 (1949); *Smith v. Tennessee Furniture Industries, Inc.*, 212 Tenn. 291, 369 S.W.2d 721 (1963); *International Playing Card & Label Co., Inc. v. Broyles*, supra.

"The reasons for the requirement as to notice of injury are to give the employer an opportunity to make an investigation while the facts are accessible, and also to enable him to provide timely and proper treatment for the injured employee." 82 Am.Jur.2d, Workmen's Compensation § 443, p. 209. See also: *York v. Federal Chemical Co.*, supra, 188 Tenn. at pages 66 and 67, 216 S.W.2d 725 to the same effect.

■ Upon this record the conclusion is inescapable that by her inexcusable failure to give her employer the required statutory notice, the plaintiff cut herself off from any right to benefits under the Workmen's Compensation Law. We have no alternative but to reverse the judgment of the trial court and dismiss this case. *Smith v. Tennessee Furniture Industries, Inc.*, supra; *In-*

*ternational Playing Card & Label Co., Inc. v. Broyles, supra.* So ordered.

The costs are taxed to the plaintiff.

HENRY, C. J., and BROCK, FONES and HARBISON, JJ., concur.