FILED
Mar 14, 2024
07:00 AM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | | |
|---|---|---|
| **MEDARIS HOLLEY,** | ) | **Docket No. 2023-08-0672** |
| **Employee,** | ) | |
| **v.** | ) | |
| **SOUTHWEST AIRLINES CO.,** | ) | |
| **Employer,** | ) | **State File No. 87130-2022** |
| **And** | ) | |
| **STARR SPECIALTY INS. CO.,** | ) | |
| **Carrier,** | ) | |
| **And,** | ) | **Judge Allen Phillips** |
| **TROY HALEY, ADMINISTRATOR,** | ) | |
| **BUREAU OF WORKERS'** | ) | |
| **COMPENSATION, SUBSEQUENT** | ) | |
| **INJURY and VOCATIONAL** | ) | |
| **RECOVERY FUND.** | ) | |

---

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS
## AND PENALTY REFERRAL

---

Mr. Holley requested medical and temporary disability benefits for a shoulder injury. Southwest claimed he failed to give timely notice of the injury. The Court held an Expedited Hearing on February 29, 2024, and holds Mr. Holley is entitled to medical benefits, specifically a panel of physicians, but denies his request for temporary disability benefits.

### History of Claim

Mr. Holley worked for Southwest as a ramp agent, which required loading and unloading aircraft. He started work in March 2022 and began having right shoulder pain in April. By July, the pain became "excruciating," and he had difficulty performing his work. He was "100% certain" his pain was work-related, and on July 9, he went to an urgent care

1

facility, where he received a compression sleeve and medication.[1]

Around that time, Mr. Holley and one of his supervisors, Ira Bembry, were talking during a lull in work. Mr. Bembry, who was wearing a knee brace, asked Mr. Holley about the compression sleeve. Mr. Holley said it was for shoulder pain and that he had been given medication. He said Mr. Bembry appeared sympathetic and told him to follow up on his shoulder because it "could deteriorate."

Mr. Holley did not tell Mr. Bembry he went to urgent care and did not "verbatim" say his pain stemmed from lifting baggage. However, Mr. Holley testified that, given "the work we did," he thought Mr. Bembry "knew what was going on."

Shortly after that conversation, Mr. Holley decided to resign. He called another supervisor, Joyce Jeltz, to inform her of his intention, and she asked Mr. Holley to meet with her first. Mr. Holley said he conveyed to Ms. Jeltz during their meeting that his shoulder pain was a "central part" of his decision, as was the amount of mandatory overtime. Ms. Jeltz assured Mr. Holley that anticipated new hires would lessen overtime, but Mr. Holley said she offered no information regarding workers' compensation. He resigned later that month because he did not believe he could continue working.

The conversations with Mr. Bembry and Ms. Jeltz are the only communications with Southwest before Mr. Holley resigned. He testified other supervisors saw him wearing the sleeve, but any conversations with them were "scanty," and he did not tell them he was hurt at work.

After resigning, Mr. Holley went on his own to orthopedic surgeon Dr. Apurva Dalal, who recorded that Mr. Holley had "significant difficulty" after working at Southwest for a month. By July, his pain had gotten so bad that he quit. Dr. Dalal suspected a rotator cuff tear, and an MRI confirmed it. In November, Dr. Dalal said Mr. Holley needed a shoulder replacement, but he was not interested in surgery at that time. Dr. Dalal offered no further treatment and said Mr. Holley could return as needed. In neither of the two records did Dr. Dalal say the shoulder condition was work-related, nor did he place any restrictions.

After seeing Dr. Dalal, Mr. Holley claimed he sent a letter to Aquan White, a manager at Southwest. In it, Mr. Holley detailed the events leading to his resignation and specifically said he resigned on July 16 after telling Ms. Jeltz of his "shoulder concerns."

Then, on December 2, Mr. Holley sent a message to Southwest's workers' compensation email address. He mentioned the urgent care visit and Ms. Jeltz's statement regarding new hires. He detailed Dr. Dalal's findings and said "he would appreciate

---

[1] The parties did not offer records from that visit.

feedback regarding filing a Workman [sic] Compensation Claim" because he had left messages on the "automated line" with no response.

A December 6 letter from Southwest's claims administrator stated they received his claim and listed, without explanation, an injury date of July 8, 2022. The administrator wrote they must "determine if [the] claim qualifies under the workers' compensation law." On December 7, the administrator sent Mr. Holley another letter that stated: "After careful consideration of all available information, it is our opinion that your claim for Workers' Compensation benefits is not compensable."

At the hearing, Mr. Holley testified he had no shoulder problems before working at Southwest and when his symptoms began shortly afterward, he was still in his probationary period. Thus, he was concerned about his ability to perform the work and about losing his job if he reported an injury.

Mr. Holley said he spoke with a Southwest representative regarding his claim in December and provided requested information. He also said he talked with a representative of the insurance company "a couple of times" before learning of the denial.

Southwest confronted Mr. Holley with portions of his deposition, particularly the details of his conversation with Ms. Jeltz where he gave reasons for his resignation other than his shoulder. Southwest moved Mr. Holley's entire deposition into evidence. In it, he testified he "knew Ms. Jeltz was aware" he was complaining about his shoulder; "of, course, yes" he told Ms. Jeltz he was having shoulder problems. He further testified that he "specifically" told her about shoulder problems, and he told her that he could no longer perform his job.

Southwest offered the sworn declaration of Mr. Bembry, who said Mr. Holley never reported a shoulder injury to him and, to his knowledge, did not report it to anyone else.

Southwest also called Ms. Jeltz, who said she receives many claims and had no incentive not to accept Mr. Holley's. She said Mr. Holley did not report an injury or problems with his shoulder. She recalled he said in their meeting that he was resigning because of the heat, mandatory overtime, and because "he couldn't do it." She added he was a nice man and a great worker. She also testified that no one from the insurance company spoke with her regarding Mr. Holley's claim.

Mr. White testified Mr. Holley told him he was resigning because the job was not a "good fit." He completed a separation notice to that effect in July and said Mr. Holley did not report a work injury at that time. He claimed he did not see the letter Mr. Holley addressed to him in the fall and that no one from the insurance company called him about the claim. Like Ms. Jeltz, he considered Mr. Holley a good worker.

Based on this proof, Mr. Holley contended he gave notice, or that Southwest had actual knowledge of his injury. He said Southwest offered no evidence that its administrator contacted anyone to investigate the claim, and it failed to show any prejudice even if he did not report the injury until December. Though he may not want surgery at this point, he still wants Southwest to furnish treatment with Dr. Dalal.

Southwest countered that Mr. Holley first reported his alleged injury in December, months after the fact. It noted his statements that his shoulder started hurting in April, but he did not report it until December. Southwest argued Ms. Jeltz's version of the meeting "makes more sense," considering Mr. Holley worked several more days rather than leaving immediately because of excruciating pain. Southwest claimed it was prejudiced by the delay because it might have provided a panel earlier and avoided what is now a potential shoulder replacement.

## Findings of Fact and Conclusions of Law

At this Expedited Hearing, Mr. Holley must show he would likely prevail at trial in proving he gave timely notice. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2023). Because he alleged a gradual or cumulative injury, section 201(b) requires Mr. Holley to give notice within 15 days of one of these two events:

- When he knew or reasonably should have known that he suffered a work-related injury resulting in permanent impairment; or
- When he was rendered unable to continue working because of an injury and knew or reasonably should have known it was caused by his work.

Whether Mr. Holley gave the required notice is determined by answering several questions under *Ernstes v. Printpack*, No. W2023-00863-SC-R3-WC, 2024 Tenn. LEXIS 1, at *13-14 (Tenn. Workers' Comp. Panel Jan. 2, 2024), a case involving a gradually occurring injury.

First, did the employee gave timely written notice? Mr. Holley did not. He was "100% certain" his shoulder condition was work related in July 2022, and he quit his job that month because he could not continue. He offered no proof that he gave written notice within 15 days of either of those events.

Second, because Mr. Holley did not give written notice, *Ernstes* requires answering this question: did Southwest have "actual knowledge" of Mr. Holley's alleged injury? *Id.* at *13. The Court finds Southwest did.

4

Two interactions with Southwest before Mr. Holley's resignation might support actual knowledge. First, Mr. Bembry saw Mr. Holley wearing a compression sleeve, asked him about it, and suggested he pay attention to his shoulder. Mr. Holley thought Mr. Bembry, himself wearing a brace and appearing sympathetic, "knew what was going on." But Mr. Holley admitted he did not report an injury to Mr. Bembry, and a report of pain is not enough unless the employee says the pain is work-related. *Int'l Playing Card and Label Co., Inc. v. Broyles*, 381 S.W.2d 888, 892 (Tenn. 1964).

But the second interaction did provide Southwest with actual knowledge. An employee provides an employer actual knowledge if he reasonably conveys to the employer that he is claiming an injury arising out of and in the course of his employment. *Masters v. Indus. Garments Mfg. Co., Inc.*, 595 S.W.2d 811, 816 (Tenn. 1980).

Mr. Holley said repeatedly in his deposition that he told Ms. Jeltz about his shoulder at the July meeting. At the hearing, he testified he told her that his shoulder pain while working was a "central part" of his resignation and that he could no longer perform his job.

Mr. Holley's version of the meeting with Ms. Jeltz is plausible. Knowing what he did at the time, Mr. Holley would logically report to his supervisor. Specifically, at the time they talked, he had been to an urgent care facility, received medication and a compression sleeve, and had talked with Mr. Bembry, who seemed concerned. At the time they talked, Mr. Holley had been in pain for some weeks and had contemplated how an injury might affect his probationary status before he reached the point of having to act. At the time they talked, Ms. Jeltz knew of the nature of Mr. Holley's job, and at the time they talked, Ms. Jeltz agreed Mr. Holley said, "he couldn't do it."

Conversely, Southwest's position is unconvincing. The administrator told Mr. Holley it would investigate the claim, but only one day later, it denied it without mentioning notice. Moreover, Ms. Jeltz and Mr. White said no one from the administrator called them regarding the claim, and Southwest offered no evidence to show the administrator investigated the claim. It specifically offered no proof from the representative whom Mr. Holley said he communicated with.

In sum, the facts support a finding that in July 2022, Mr. Holley resigned because of his shoulder and he reasonably conveyed that he had a work injury. The Court finds Mr. Holley credible and believes his version of the events. Ms. Jeltz and Mr. White considered him a good worker, and his testimony and demeanor during the hearing supported those opinions. He was calm, steady, and most of all reasonable when he explained his version. *See Kelly v. Kelly*, 445 S.W.3d 685, 694-695 (discussing indicia of witness credibility).

As to the requested benefits, Mr. Holley offered no proof of entitlement to temporary disability benefits. Further, his limited contact with Dr. Dalal does not justify

designating him the treating physician. Thus, Southwest shall provide Mr. Holley a panel of orthopedic surgeons, from which he might choose one for evaluation and treatment.

Finally, an adjusting entity must make a compensability decision within 15 days of receiving notice and advise the employee in writing via a Notice of Denial form. The notice must include the basis for denial. Tenn. Comp. R. & Regs. 0800-02-14.04(6) (2022). The denial letter to Mr. Holley was timely, but not on a Bureau form and did not include the basis for denial. Thus, a referral for consideration of a penalty under Rule 14-.10(3) is appropriate.

**IT IS, THEREFORE, ORDERED** as follows:

1. Southwest shall provide Mr. Holley a panel of orthopedic surgeons and schedule an appointment with Mr. Holley's selected surgeon for evaluation and treatment.

2. The Court refers the case to the Compliance Program for consideration of a penalty for failure to provide Mr. Holley with a proper Notice of Denial.

3. The Court sets a Status Hearing for **Wednesday, July 10, 2024, at 9:00 a.m. Central Time.** The parties must call 731-422-5263 or toll-free 855-543-5038 to participate.

4. Unless interlocutory appeal of this Expedited Hearing Order is filed, compliance must occur no later than seven business days from the date of entry as required by section 239(d)(3). Southwest must submit confirmation of compliance to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED March 14, 2024.**

_Allen Phillips_
_____
**JUDGE ALLEN PHILLIPS**
**Court of Workers' Compensation Claims**

# APPENDIX

<u>Exhibits</u>
1. Medical Records of Dr. Dalal
2. Wage Statement
3. Attachments to Petition for Benefit Determination
4. Representation letter
5. Mr. Holley's letter to Southwest manager
6. Letters from claim administrator
7. Mr. Holley's affidavit in support of Expedited Hearing
8. Separation Notice
9. Mr. Holley's e-mail to workers' compensation representative
10. Sworn declaration of Ira Bembry
11. Mr. Holley's deposition

<u>Technical Record</u>
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Order Setting Expedited Hearing—July 13, 2023
5. Employer's Motion to Continue Expedited Hearing and to Compel Discovery
6. Employee's Response to Motion to Compel and For Protective Order
7. Employer's Response to Employee's Response to Motion to Compel
8. Employer's Expedited Hearing Statement
9. Order Granting Motion to Continue and Compelling Discovery
10. Status Hearing Order-October 12, 2023
11. Order Setting Expedited Hearing—November 7, 2023
12. Employer's Witness and Exhibit List
13. Employer's Expedited Hearing Statement
14. Notice of Expedited Hearing—February 29, 2024
15. Employer's Motion for Videoconference Appearance
16. Order Allowing Appearance by Videoconference
17. Employee's attachment to Petition for Benefit Determination

**CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent as indicated on March 14, 2024.

| Name | Email | Service Sent To: |
|---|---|---|
| Andrew L. Wener, Employee's Attorney | X | awener@wenerlawfirm.com |
| B. Duane Willis, Employer's Attorney | X | dwillis@morganakins.com |
| Timothy Kellum, Second Injury Fund Attorney | X | timothy.kellum@tn.gov |
| Compliance Program | X | WCCompliance.Program@tn.gov |

_____
**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties
**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*