GREENER *v.* E. I. DU PONT DE NEMOURS & CO.

*(Nashville,* December Term, 1948.)

Opinion filed March 11, 1949:

Jack Norman and Louis Farrel, Jr., both of Nashville, for plaintiff in error.

Charles L. Cornelius, of Nashville, and Abel Klaw, Wilmington, Deleware for defendant in error.

Mr. Justice Tomlinson delivered the opinion of the Court.

Greener has appealed from the judgment of the Circuit Court sustaining a demurrer to his petition for compensation under the Tennessee Workmen's Compensation Law. Williams' Code sec. 6851 *et seq.*

He bases his claim for compensation upon the provisions of Chapter 139 of the Public Acts of 1947, Williams' Code, sec. 6852 (d), whereby it is provided for the first time that certain named occupational diseases, including lead poisoning, which arise out of and in the course of employment shall be compensable under the Workmen's Compensation Law. This Act provides, however, that "an occupational disease which an employee has on the effective date of this amendatory act shall not be covered hereunder". The Act became effective March 12, 1947.

Treating as true the petition's allegations of fact in testing the merits of the demurrer, the facts are that

Greener had been employed by appellee "as a lead burner for a considerable length of time". "After some time in October, 1946 petitioner developed symptoms of the disease of lead poisoning", and was treated by defendant's "medical staff" until May 26, 1947 when he was "fired for 'lack of work' ". There was no indication on his separation notice that he had this disease, but he believed that he did. He was able, however, to work during all this period. He consulted his own physician after he was discharged. That physician "diagnosed his disease as an advanced case of lead poisoning". "For a great part of the time since May 1947 he has been physically unable to do any kind of work", except that at the time of the filing of the petition he was able to earn some money "intermittently". He alleges himself to be totally and permanently disabled "within the meaning of the Workmen's Compensation Act".

Greener alleged in his petition "that his disease or condition had not developed by May 26, 1947 to such an extent that it could be diagnosed as an occupational disease, and that within the meaning of the Workmen's Compensation Act of Tennessee, he did not have lead poisoning on the effective date of the Act allowing compensation therefor".

Relevant to this allegation is that provision of the 1947 Act immediately following, and in the same paragraph, the provision which excludes from the benefits of the Act employees who had the occupational disease on the effective date of the Act, to wit, March 12, 1947. That immediately following provision is this: "An employee has an occupational disease within the meaning of this law if the disease or condition has developed

to such an extent that it can be diagnosed as an occupational disease''.

The first of the two grounds of demurrer sustained by the Trial Court is that the petition discloses Greener to have had lead poisoning on March 12, 1947.

 In considering the first ground of the demurrer, there should be kept in mind the commonly known fact that this occupational disease is latent and progressive. As observed in the carefully considered California case of *Marsh* v. *Industrial Accident Commission*, 217 Cal. 338, 18 P. (2d) 933, 935, 86 A. L. R. 563, an occupational disease ''is the cumulative effect of exposure day after day that produces the injurious results'', and that ''the specific date of origin is impossible of determination''.

Since the Act had declared that no employee should come within its benefits who had on a specific calendar date, March 12, 1947, an occupational disease that in fact gradually develops imperceptibly over a period of time rather than occurring at a specific time, it was obviously necessary in fairness to both employee and employer that some relevant physical condition shown by symptoms to definitely exist on the calendar date fixed should be declared as determinative of whether the employee had on that fixed calendar date this gradually developing disease known as lead poisoning. So the Act declared that if the condition of the employee on March 12, 1947 had developed to the point that a physician could with reasonable certainty tell from the symptoms (diagnose) that the ailment is lead poisoning, then the employee would not come within the benefits of the law that became effective on that date. This took the matter out of the realm of speculation. Compare *Marsh* v. *Industrial Accident Commission, supra.*

According to Vol. 12, Words and Phrases, Perm. Ed., Pocket Part, "diagnosis" is a physician's "conclusion as to existence or identity of disease, drawn from the observable symptoms". It is a matter of common knowledge that some symptoms of a given disease, particularly in its early stage, may likewise be symptoms of any one of several other diseases. By way of illustration, the California court in *Marsh* v. *Industrial Accident Commission*, 217 Cal. 338, 18 P. (2d) 933, 935, 86 A. L. R. 563, 566, in discussing this question with reference to a certain occupational disease it had under consideration, called attention to the fact that "in its manifestations it may simulate heart disease or other varieties of lung disease, and in earlier stages it may present but few and ill-defined signs in the stethoscopic and even the X-ray examination". That is, while those "few and ill-defined signs" are symptoms of any one of several diseases, they are not conditions that have developed to such an extent as to enable a physician to then identify (diagnose) which of those several diseases afflict the patient.

So, the allegation of the petition that after some time in October 1946 petitioner developed conditions which were symptoms of lead poisoning does not amount to an allegation that on March 12, 1947 a physician was able to diagnose his ailment as lead poisoning, as in substance insisted by this first ground of the demurrer. Further, the petition affirmatively avers it to be a fact that "his disease or condition had not developed by May 26, 1947 to such an extent that it could be diagnosed as an occupational disease, and that within the meaning of the Workmen's Compensation Act of Tennessee, he

did not have lead poisoning on the effective date of the Act allowing compensation therefor''.

■ The conclusion of this Court is that it is not disclosed upon the face of the petition that Greener had lead poisoning within the meaning of the law on the effective date of the amendatory act, to wit, March 12, 1947; that, to the contrary the affirmative allegations of the petition are to the effect that he did not have lead poisoning on March 12, 1947 within the meaning of the amendatory act. It results that the first ground of the demurrer is not, in our opinion, well taken.

The second ground of demurrer is that the petition ''admits the defendant was not notified within thirty days after the first distinct manifestation of the occupational disease'' as required by the Workmen's Compensation Act.

The 1947 Act has this requirement with reference to notice: ''Within thirty (30) days after the first distinct manifestation of an occupational disease the employee, or some one in his behalf, shall give written notice thereof to the employer in the same manner as is provided in the case of a compensable accidental injury.'' Williams' Code Supplement, Section 6852(d).

When we come to consider the merits of this second ground of demurrer the first question that logically comes to mind is the meaning of the expression ''first distinct manifestation'' of an occupational disease as used in the Workmen's Compensation Law. Vol. 26 Words and Phrases, Perm. Ed., page 346, citing the Connecticut case of *Bremner* v. *Marc Eidlitz & Son*, 118 Conn. 666, 174 A. 172, says this: The ''duty to give notice of claim for compensation for occupational disease within a year after first manifestation of symptom thereof arises only

when such symptom plainly appears, not when merely suspected or doubtful''.

If we should apply the rule as stated by this Connecticut Court to the facts we have here it would seem to be necessary that the second ground of the demurrer be overruled. Greener did develop symptoms of lead poisoning commencing after some time in October 1946 and was treated by the defendant's medical staff until May 26, 1947. While he believed that he had lead poisoning or was developing it, he did not know this and the necessary implication of the petition is that the defendant's doctors did not know it. Its existence, therefore, remained doubtful; that is, there had been no "distinct manifestation" of lead poisoning during this period of time.

If we interpret the expression "first distinct manifestation" in connection with the context of the 1947 Act in which it is found, it would seem to be necessary to hold that the "first distinct manifestation" of lead poisoning occurred when the symptoms had reached the point where doubt was so far removed as to enable a physician to diagnose the trouble as lead poisoning. That appears to be the logical meaning of first distinct manifestation as used in this statute. It clearly is not a distinct manifestation of lead poisoning prior to the time that it could be so diagnosed.

As heretofore observed, the petition, when fairly construed, does by necessary implication allege that doctors of the defendant were not able up to May 26, 1947 to diagnose the trouble as lead poisoning. That petition, moreover, affirmatively alleges that the "disease or condition had not developed by May 26, 1947 to such an extent that it could be diagnosed as an occupational dis-

ease''. It does not allege that it did not give notice within thirty days after the disease could be so diagnosed. Therefore, it does not allege that it did not give notice within the thirty day period. The law does not require that the petition affirmatively allege that statutory notice was given or a reason for not giving it. That is a matter of defense. *Hartwell Motor Company* v. *Hickerson*, 160 Tenn. 513, 26 S. W. (2d) 153.

We are unable to agree with the insistence that the petition ''admits the defendant was not notified within thirty days after the first distinct manifestation of the occupational disease''. We, therefore, must hold that the second ground of the demurrer was not good.

There are other criticisms of the petition which we do not consider it necessary to discuss since our investigation is necessarily limited to the actual grounds of demurrer. We think, however, that the petition, in so far as it reveals the facts, states a cause which entitles the petitioner to relief.

Reversed and remanded for further appropriate proceedings with costs of this appeal adjudged against the appellee.

All concur.