Lisa MADDEN

v.

**THE HOLLAND GROUP OF TENNESSEE, INC.**

Supreme Court of Tennessee.

Feb. 3, 2009.

Kirk L. Clements, Goodlettsville, Tennessee, for the appellant, Lisa Madden.

Kitty Boyte, Nashville, Tennessee, for the appellee, The Holland Group of Tennessee, Inc.

## OPINION

E. RILEY ANDERSON, SP. J., delivered the opinion of the court, in which JANICE M. HOLDER, C.J., CORNELIA A. CLARK, GARY R. WADE, and WILLIAM C. KOCH, JR., JJ., joined.

We granted review in this workers' compensation appeal to determine whether the Employee was eligible for benefits under Tennessee law after she suffered a work-related injury in Kentucky. In affirming the trial court's dismissal of the complaint, a majority of the Special Workers' Compensation Appeals Panel concluded that the Employee failed to show that her contract for hire was formed in Tennessee or that there was a substantial connection between Tennessee and her employee-employer relationship at the time of injury. *See* Tenn.Code Ann. § 50–6–115. After reviewing the record and applicable authority, we affirm the Panel's judgment.

## Background

The Employee, Lisa Madden ("Madden"), is a resident of Macon County, Tennessee. The Employer, The Holland Group of Tennessee ("Holland"), has its corporate office in Murfreesboro, Tennessee, and has branch offices in eight other states, including Kentucky. Holland's business involves providing temporary employees to other companies.

In September of 2004, Madden telephoned the Holland office in Scottsville, Kentucky, from her home in Macon County, Tennessee, seeking a job at the J.M. Smucker plant. After being informed that Holland was accepting applications, Madden traveled to Scottsville, Kentucky, from Tennessee, completed an application, and interviewed with Katherine Marsh ("Marsh"), the division manager at the Scottsville office. Because J.M. Smucker did not have a position available, Marsh offered Madden a position at the Sumitomo plant, also located in Kentucky.

At this juncture, there was a dispute about the substance of the conversation between Marsh and Madden. Marsh testified that she told Madden the location of the Sumitomo plant, the hours and the pay; Marsh added that she "made ... the job offer" and Madden "accepted it." Marsh testified that she had no recollection of Madden saying that she wanted to talk to her husband before accepting the job. Marsh testified that she phoned Madden later that day and told her that orientation at Sumitomo was the next day.

Madden disagreed and testified that she did not accept the position with Sumitomo while in Kentucky and that she told Marsh she wanted to talk to her husband before accepting the job. She testified that she returned home, talked with her husband, and then accepted the position by telephone from her home in Tennessee. Thereafter, on September 14, 2004, Madden reported to work as instructed. Madden worked for Holland at the Sumitomo

plant for approximately three weeks before being placed by Holland at the J.M. Smucker plant in early October of 2004. On October 10, 2004, Madden injured her right wrist while working at Smucker's.

According to the undisputed evidence, Madden never worked for Holland outside of Kentucky and was never required to go to Holland's corporate office in Murfreesboro, Tennessee. Although Holland's Scottsville office frequently hires Tennesseans, none of their employees work in Tennessee. As division manager, Marsh interviews, hires, and fires employees without checking with any superiors at the corporate office in Tennessee. The corporate office does, however, formulate the policies and procedures applicable to all Holland employees in the several states where they have local offices, including Kentucky; moreover, at the time Madden suffered her injury, the corporate office generated and issued all the employees' pay checks in the several states.

Madden filed a claim for workers' compensation benefits in the Circuit Court for Macon County, Tennessee, seeking to recover benefits for the work-related injury she sustained on October 10, 2004, in Scottsville, Kentucky. Holland then filed a motion to dismiss contending the trial court did not have jurisdiction over the subject matter because Madden was hired in Kentucky and worked in Kentucky for a Kentucky employer and because there was no substantial connection between Tennessee and the employer-employee relationship.

After a hearing, the trial court found that Madden's contract of hire was not made in Tennessee, and there was not a substantial connection between Tennessee and the employer-employee relationship. *See* Tenn.Code Ann. § 50–6–115. Accordingly, the trial court dismissed the complaint and on appeal, a majority of the

Special Workers' Compensation Appeals Panel affirmed.

We granted Madden's motion for review.

## STANDARD OF REVIEW

The standard of review of issues of fact is *de novo* upon the record of the trial court accompanied by a presumption of correctness of the findings, unless the preponderance of evidence is otherwise. Tenn.Code Ann. § 50–6–225(e)(2) (2008). When the trial court has seen and heard the witnesses, considerable deference must be afforded any factual determinations made by the trial court. *Tryon v. Saturn Corp.,* 254 S.W.3d 321, 327 (Tenn.2008). However, the same deference need not be afforded findings based upon documentary evidence, such as depositions. *Glisson v. Mohon Int'l, Inc./Campbell Ray,* 185 S.W.3d 348, 353 (Tenn.2006). Moreover, a trial court's conclusions of law are reviewed *de novo* upon the record with no presumption of correctness. *Perrin v. Gaylord Entm't Co.,* 120 S.W.3d 823, 826 (Tenn.2003).

## ANALYSIS

On appeal, Madden argues that the trial court erred in dismissing her complaint for workers' compensation benefits because her contract of hire with Holland was made in Tennessee and because there was a substantial connection between Tennessee and the employer-employee relationship. *See* Tenn.Code Ann. § 50–6–115(2) and (3). Holland's position is that the trial court properly dismissed the complaint and that the Panel's majority was correct in affirming that action.

We begin our review with the applicable statutory provisions. Tennessee Code Annotated section 50–6–115 provides that an employee who suffers an injury outside the State of Tennessee is entitled to Tennessee

workers' compensation benefits if, at the time of injury:

    (1) The employment was principally localized within this state;

    (2) The contract of hire was made in this state; or

    (3) If at the time of the injury the injured worker was a Tennessee resident and there existed a substantial connection between this state and the particular employer and employee relationship.

■ These statutory provisions recognize that employees may obtain and perform work in more than one state and that many employers have work locations or offices in numerous locations.[1] As a result, when an employee is injured in the course and scope of employment, the relevant legal question is often where that employee may pursue workers' compensation benefits. Under certain circumstances, the election of remedies doctrine may preclude an injured employee who has pursued a workers' compensation claim in another jurisdiction from filing the same claim in Tennessee. *Bradshaw v. Old Republic Ins. Co.*, 922 S.W.2d 503, 504 (Tenn. 1996). As this Court has stated, "[t]he mere acceptance of benefits from another state does not constitute an election, but affirmative action to obtain benefits or knowing and voluntary acceptance of benefits from another state will be sufficient to establish a binding election." *Perkins v. BE & K, Inc.*, 802 S.W.2d 215, 217 (Tenn. 1990).[2]

■ A proper interpretation of Tennessee Code Annotated section 50–6–115 is critical in determining where an injured employee should seek relief. When interpreting these statutory provisions, we must "ascertain and give effect to legislative intent without unduly restricting or expanding the intended scope of a statute." *Parks v. Mun. League Risk Management Pool*, 974 S.W.2d 677, 679 (Tenn.1998) (citation omitted). We must examine the language of a statute and, if unambiguous, apply its ordinary and plain meaning. *Id.* As we have said, "[l]egislative intent is determined 'from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning.'" *State v. Pickett*, 211 S.W.3d 696, 700 (Tenn.2007) (quoting *Osborn v. Marr*, 127 S.W.3d 737, 740 (Tenn.2004)). We now turn to the present case with these principles in mind.

### Contract of Hire

With respect to the issue of whether the contract for hire was made in Tennessee as required by Tennessee Code Annotated section 50–6–115(2), the employee, Madden, contends that the contract for hire was formed in Tennessee because she accepted the position with Holland by telephone when she was at her home in Tennessee. The employer, Holland, asserts that the contract for hire was formed in Scottsville, Kentucky, relying on their division manager Katherine Marsh's testimony that she offered the job to Madden at the end of the interview and Madden accepted. According to Holland, Madden accepted the Sumitomo position in Scottsville, Kentucky, and she was advised of her start date and shift assignment during a later telephone call from Marsh.

As the Special Workers' Compensation Appeals Panel observed, "whether the contract for hire was formed in Tennessee is

---

1. *See* Annotation, *Extraterritorial Operation of Workmen's Compensation Statutes; Conflicts of Laws*, 90 A.L.R. 119 (1934 and Supp.2008).

2. The election of remedies doctrine was not raised and is not an issue in this case.

[a] question of fact." As the Panel recognized, this Court has determined that "[w]here an acceptance of an offer is given by telephone, it is generally held that the place of contracting is where the acceptor speaks his acceptance." *Matthews v. St. Paul Property & Liability Ins.*, 845 S.W.2d 737, 739 (Tenn.1992) (quoting *Tolley v. Gen. Accident, Fire & Life Ins. Corp.*, 584 S.W.2d 647, 649 (Tenn.1979)). In *Matthews*, this Court held that the contract for hire took place in Tennessee, where the employer *offered* the job by telephone, even though a written contract was later executed in another state. 845 S.W.2d at 739. In an earlier Tennessee Supreme Court case with somewhat different facts, the employee received a telephone call informing him that work was *available* in Covington, Virginia, and then proceeded to Virginia where he signed "work papers." *Perkins*, 802 S.W.2d at 215. When he was later injured in Virginia, the employee sought workers' compensation benefits in Tennessee, arguing that the telephone call he received in Tennessee established the "contract of hire" in this State. This Court rejected that argument, reasoning that the telephone notification of *available* employment did not constitute a contract of hire under Tennessee Code Annotated section 50–6–115(2). *Perkins*, 802 S.W.2d at 215–17.

Applying the foregoing principles, we note that the trial court accredited Holland division manager Katherine Marsh's testimony that she offered the job to Madden during the interview in Kentucky and that Madden accepted it. Marsh had no memory of Madden saying that she wanted to discuss the offer with her husband before accepting. Because the applicable standard of review requires that we give the trial judge, who saw and heard the witnesses, considerable deference with regard to issues of credibility and the weight afforded to witness testimony, we hold that the evidence does not preponderate against the trial judge's finding that the contract for hire was formed in Kentucky.

### Substantial Connection

The remaining issue to be decided is whether there is a substantial connection between the Tennessee resident employee and the employer/employee relationship as required by Tennessee Code Annotated section 50–6–115(3). Madden argues that the trial court erred in dismissing her claim because she is a Tennessee citizen and that there was a substantial connection between her relationship with Holland and the State of Tennessee. She emphasizes that Holland's corporate office is located in Murfreesboro, Tennessee, that her paycheck was generated and issued at the Tennessee corporate office, and that Holland's policies and procedures affecting her employment were also formed at the corporate office. Holland argues that the employer-employee relationship was established in Kentucky, that Madden was interviewed and accepted the position in Kentucky, and that Madden worked and was injured in Kentucky. Holland further argues that issuing paychecks from its central billing system in Murfreesboro was not enough to establish a substantial connection between Madden and Tennessee.

■ As noted above, Tennessee Code Annotated section 50–6–115(3) states that an employee who is injured outside of Tennessee is eligible for benefits "[i]f at the time of the injury the injured worker was a Tennessee resident and there existed a substantial connection between this state and the particular employer and employee relationship." *Id.* The plain language of the statute contains two requirements: the first requirement is that at the time of the injury "the injured worker was a Tennessee resident;" and the second requirement

is that at the time of injury "there existed a substantial connection between this state and the particular employer and employee relationship."

In our view, the plain language of the statute makes it very unlikely that the legislature intended for the second requirement to be met in all cases where the employer is a Tennessee resident; indeed, had that been the intent, the only requirement in § 50–6–115(3) would be that "the employer was a Tennessee resident." *Id.* The plain language of the statute requires that there also be a "substantial connection between this state and the particular employer and employee relationship." Likewise, given the legislature's inclusion of the word "substantial," it is clear that the legislature did not intend for *any* connection between this state and the employee and employer relationship to be sufficient. Accordingly, the key interpretative question is what is meant by a "substantial connection." Since that term is undefined in the statute, we turn to our prior cases for guidance.

In *Bryant v. Seward*, 490 S.W.2d 497, 499 (Tenn.1973), this Court concluded that a substantial connection existed where the employer and employee were residents of Tennessee, the employee performed some of his work in Tennessee, a portion of the employer's business premises was located in Tennessee, and the employment included work to be performed in Tennessee. *Id.* at 499. In that case, the employee worked as a "cave guide" at a tourist attraction located on the Tennessee–Virginia state line; the attraction consisted of a cave, which was located in Virginia, and a souvenir shop which was located in Virginia but included property in Tennessee. The employee was seriously injured when he was struck by a car while taking a tour from the cave to the souvenir stand in Virginia. This Court explained:

There is much in this record, ... to warrant Tennessee's interest in this employment relation and these parties. The employment relationship of this employer and employee involved the performance of some work in Tennessee, the location of a portion of the business premises within Tennessee, and possibly some contract negotiations within Tennessee.

*Id.*

The Court in *Bryant* observed that both the employer and the employee were Tennessee residents and that "the application of Tennessee law would simply be an adjudication of rights between two persons who, for all material time periods, have been Tennessee residents." *Id.* (citing A. Larson, Workmen's Compensation Law § 86.34 (1971)). However, the Court emphasized that the "additional category of cases ... determined to be within the statute's coverage ... is necessarily limited to those few cases presenting unique factual situations wherein the involvement of Tennessee is very substantial despite the fact that the contract and the injury were elsewhere." *Bryant*, 490 S.W.2d at 499 ("[I]t seems most equitable to allow the employee the option to pursue his claim in Tennessee under these facts.").

One year later, in *Ray v. Aetna Casualty & Surety Co.*, 517 S.W.2d 194, 196 (Tenn.1974), this Court held that Tennessee workers' compensation law did not apply where the employee, a Tennessee resident, formed the contract for employment in Missouri, worked in Missouri, and was injured in Missouri. Although the Court cited *Bryant*, it clarified that "the place of the employee's residence, although having a very real interest as the community which might have to support a disabled and uncompensated workman," has never been deemed controlling. *Ray*, 517 S.W.2d at 196 (quoting A. Larson, Work-

men's Compensation Law § 87.60 (1972)). As a result, the Court concluded:

> In the present case it is undisputed that the only contacts which the State of Tennessee has with the workmen's compensation claim in question are that the disabled workman is a resident of the state and that he was notified of the job opportunity through his local union. It is true that the employer has workman's compensation insurance coverage sufficient to satisfy the requirements of the law of this state as well as of other states in which it operates.... *We hold, however, that these are insufficient contacts with the state to justify the application of the local workmen's compensation law to the claim, since the contract of employment, the performance of the work and the injury all occurred in another state.*

*Ray,* 517 S.W.2d at 197 (emphasis added); *see also* 99 C.J.S. *Workers' Compensation* § 84 (1908) ("[T]he sole fact that an employer is headquartered in the forum state is insufficient to warrant application of the forum state workers' compensation law to a worker who has suffered a debilitating injury outside of the state....").

In our view, *Ray* and *Bryant* demonstrate that a "substantial connection between the State of Tennessee and the employee-employer relationship" requires much more than just an employee's residence in Tennessee and that the reviewing court must consider all relevant factors. Here, although Madden and Holland are residents of Tennessee, none of the other factors referred to in *Ray* and *Bryant* are present: Madden traveled to Kentucky to apply for the job with Holland; she was interviewed and hired in Kentucky; she worked exclusively in Kentucky; and she was injured in Kentucky. Although Madden emphasizes that Holland printed paychecks and formulated work-policies in

Tennessee, the same is true for all of Holland's employees throughout nine states; moreover, these acts, even if considered a connection to Tennessee, are not the *substantial* connection the statute requires. Accordingly, we hold that Madden is not entitled to workers' compensation benefits under the provisions of Tennessee Code Annotated section 50–6–115(3).

### Conclusion

After reviewing the record and applicable authority, we conclude that the employee, Lisa Madden, failed to show that her contract for hire was formed in Tennessee or that there was a substantial connection between Tennessee and her employee-employer relationship at the time of injury. Costs on appeal are assessed against Madden, and her surety, for which execution may issue if necessary.