

**FILED**
**Aug 20, 2021**
**10:47 AM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Sebastian Mitchell | ) | Docket No.     2020-01-0494 |
| | ) | |
| v. | ) | State File No.  46913-2020 |
| | ) | |
| AECOM d/b/a Shimmick | ) | |
| Construction, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Thomas L. Wyatt, Judge | ) | |

---

### Affirmed and Remanded

---

The employee alleged suffering a work-related injury to his hand that became infected, requiring emergency surgery.  The employer denied the employee's claim, asserting that the alleged injury did not arise primarily out of the employment and that the employee failed to give timely notice of his injury.  Following an expedited hearing, the trial court determined the employee was unlikely to prevail at trial in establishing he gave timely notice of his injury but that the employer failed to establish that it was prejudiced by the late notice.  The court awarded some of the medical benefits the employee requested and denied the employee's request for temporary disability benefits.  The employer has appealed.  We affirm the trial court's award of medical benefits and remand the case.

Judge David F. Hensley delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Pele I. Godkin joined.

Stephanie Rockwell, Lawrenceville, Georgia, for the employer-appellant, AECOM d/b/a Shimmick Construction, Inc.

G. Brent Burks, Chattanooga, Tennessee, for the employee-appellee, Sebastian Mitchell

### Factual and Procedural Background

Sebastian Mitchell ("Employee") was hired as a laborer by AECOM, d/b/a Shimmick Construction, Inc. ("Employer"), to work on a construction project related to Tennessee Valley Authority's enlargement of the lock at Chickamauga Dam in Hamilton County, Tennessee.  The project included drilling holes in the river bottom into which

pylons could be inserted. The drill bit used in the process pulls out a mixture of water, mud, rock, and other materials that is pumped into a floc trailer.[1]

Employee described the work he was performing on the day of his alleged injury as shoveling sludge from the bottom of the floc trailer, which he said required him to remove the top grate and crawl down into a very small space and shovel in a crouched position. He was wearing work gloves and said he got a small cut on the side of his thumb that he reported to his foreman, Jesse Moffitt. He said his thumb started swelling before the end of his shift, and he described taking his gloves off to "see where it was swelling, but [he] couldn't really tell because it was a small cut." Employer denied that Employee reported an injury on the day in question and introduced into evidence Employee's timecard from the day of the alleged incident. The timecard indicated Employee was performing tasks in an area different from the floc trailer throughout the day and that he did not report suffering an injury that day. Jennifer Wix, with whom Employee resided, testified that she observed a scrape on Employee's finger when he came home from work, adding that she washed the scrape with peroxide and applied Neosporin.

The following day, Employee saw a nurse practitioner at a primary care facility in South Pittsburg, Tennessee. According to the medical report, Employee reported pain and swelling in his right thumb that started the previous day and was gradually worsening. The report stated that Employee "denies fever or recent injury," and noted that on March 30, 2020, Employee had "acute idiopathic gout of right hand." The April 8, 2020 report included "Indications" of "acute idiopathic gout of right hand" for which Employee was prescribed medication.

Three days after his visit to the primary care facility, Employee presented to a local hospital emergency room and was admitted for emergency surgery, which was performed the following morning. Employee's postoperative diagnosis was "Cellulitis, right forearm nearing infectious compartment syndrome, [c]arpal tunnel syndrome, [v]olar flexor tenosynovitis, and [t]enosynovitis to all five digits." The operating surgeon, Dr. Chris Pankiw, an orthopedic surgeon who focuses on hand and upper extremity surgery, subsequently provided an affidavit that included the following:

> [I]t is my opinion, within a reasonable degree of medical certainty, and considering all causes, that [Employee] sustained a laceration into the tendon sheath of his right hand which allowed bacteria to enter into his right arm and into the tendon sheath. The bacteria entry caused a terrible infection which ultimately caused [Employee] to experience an inflammatory cascade of symptoms from which he still suffers and severely limits the use of his right arm and hand into a frozen claw of sorts. [Employee] reported sustaining the

---

[1] "Flocculation" is a water filtration process whereby solids are removed from water. Employee referred to the equipment into which materials were pumped for filtration as the "floc" trailer.

2

cut while working for [Employer] the week before even at my first consultation with him on April 12, 2020. When I operated on him at that time, he still had the cut on his right thumb and when we performed the fasciotomy on his right arm, there was a trail of pus that we had to drain which extended deep into his forearm directly from the laceration. Therefore, it is my opinion that the cut, infection and sequelae of the infection, arose primarily out of and in the course and scope of his employment with [Employer] and that the employment contributed to more than fifty percent (50%) in causing [Employee's] right upper extremity injuries and the need for the initial and subsequent surgical procedures I performed.

Employer denied Employee's claim, asserting there was no work-related accident that occurred on April 7, 2020, and that Employee did not provide timely notice of his alleged injury until July 28, 2020. Following Employee's filing of a petition for benefits, Employee requested an expedited hearing in which he sought medical and temporary disability benefits.

The trial court determined Employee did not know the swelling in his right hand was related to the cut on his thumb until Dr. Pankiw advised him so at his initial visit, noting also that the nurse practitioner who treated Employee on April 8, 2020 "misdiagnosed [Employee] with gout." The court determined Employee had a reasonable excuse for failing to provide notice of his injury before his visit with Dr. Pankiw, but also determined Employee failed to give Employer timely notice of his injury after having learned from Dr. Pankiw that the infection in his hand resulted from the work incident. Further, noting Employer "offered no evidence regarding what prejudice it suffered concerning investigating the incident because of [Employee's] untimely notice," the trial court concluded Employer suffered no prejudice to its right to investigate because of [Employee's] failure to provide timely notice."

The trial court concluded Employee "credibly testified that he cut his thumb at work," and the court gave "little weight to the supervisor's testimony that [Employee] did not work at the sludge trailer on April 7." Relying on Dr. Pankiw's opinions, the trial court concluded Employee would likely prevail at trial in showing his injury arose primarily out of and in the course and scope of his work. The court ordered Employer to pay all charges related to Employee's emergent care, including the April 12, 2020 surgery by Dr. Pankiw, but determined Employer was not responsible for the expenses related to Employee's medical treatment after his release from the hospital and until the date of the court's expedited hearing order. The court ordered Employer to provide either a panel of doctors for such additional treatment as Employee may require for the work injury, or written authorization for Dr. Pankiw to continue treating Employee. The court denied Employee's request for temporary disability benefits, concluding Employee did not introduce evidence to establish his earnings with Employer. Employer has appealed.

3

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2020). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2020).

**Analysis**

Employer raises two issues on appeal, which we have restated as follows: (1) whether Employee's failure to provide timely notice of his injury prejudiced Employer's ability to investigate the alleged injury and to facilitate the medical care Employee required; and (2) whether the preponderance of the evidence supports the trial court's determination that Employee will likely prevail at trial in establishing his injury arose primarily out of and in the course and scope of the employment. As addressed below, we conclude the preponderance of the evidence supports the trial court's determinations.

*Whether Employer was Prejudiced by Employee's Untimely Notice of Injury*

Tennessee Code Annotated section 50-6-201(a)(1) (2020) provides that an injured employee "shall, immediately upon the occurrence of an injury, or as soon thereafter as is reasonable and practicable, give or cause to be given . . . written notice of the injury." Further, this section provides that "[n]o compensation shall be payable under this chapter, unless the written notice is given to the employer within fifteen (15) days after the occurrence of the accident, unless reasonable excuse for failure to give the notice is made to the satisfaction of the tribunal to which the claim for compensation may be presented." *Id.* In addition, section 50-6-201(3) provides that "[n]o defect or inaccuracy in the notice shall be a bar to compensation, unless the employer can show, to the satisfaction of the workers' compensation judge before which the matter is pending, that the employer was prejudiced by the failure to give the proper notice, and then only to the extent of the prejudice."

4

Here, the trial court determined Employee was not likely to prevail at trial in showing he gave Employer timely notice of his injury. Employee has not appealed this determination. However, the trial court further determined that Employer "suffered no prejudice to its right to investigate [the claim] because of [Employee's] failure to provide timely notice." Employer asserts the lack of timely notice "certainly prejudiced [Employer's] ability to make a proper investigation and provide medical care." According to Employer, if Employee had timely reported a work-related event, "it would have been escalated to the safety department for further handling and to ensure [Employee] received timely and appropriate medical care." Further, Employer contends it "would have also been able to investigate the claim further from the perspective of a work-related injury," and because Employee "did not initial[ly] report a work injury, stated he did not know where he hurt himself, and asked for a 'clean lay-off' without regard to a potential work injury, the Employer could not properly investigate the claim."

The trial court concluded Employer "offered no evidence regarding what prejudice it suffered concerning investigating the incident because of [Employee's] untimely notice," stating that Employer's representatives "had the opportunity to question [Employee] about his injury within the notice period." According to the trial court, Employer "learned in a timely manner the nature and seriousness of [Employee's] injury and the fact that it disabled him." The court concluded Employer suffered no prejudice to its right to investigate because of [Employee's] failure to provide timely notice."

The Tennessee Supreme Court long ago held that "[t]he reasons for the requirement as to notice of injury are to give the employer an opportunity to make an investigation while the facts are accessible and also to enable [the employer] to provide timely and proper treatment for the injured employee." *Aetna Casualty & Surety Co. v. Long*, 569 S.W.2d 444, 449 (Tenn. 1978). While the presence or absence of prejudice to an employer is a factor to be considered in determining the reasonableness of an employee's excuse for not giving timely notice, *see McCaleb v. Saturn Corp.*, 910 S.W.2nd 412, 415 (Tenn. 1995), section 50-6-201(a)(3) clearly places the burden on the employer to show "that the employer was prejudiced by the failure to give the proper notice," Tennessee Code Annotated section 50-6-201(a)(3). Moreover, even if prejudice is shown, an employer is entitled to relief "only to the extent of the prejudice." *Id.*

Employee's supervisor testified that Employee did not report an injury to him. When asked whether he ever received any verbal or written notice from Employee about a work-related injury, the supervisor said, "I can't say that he didn't give me a doctor's note for something as an excuse for an absence." He further testified that if an injury is reported to him, he "take[s] it directly to Safety." However, the supervisor did not offer testimony addressing whether Employer was prejudiced or how Employer may have been prejudiced by the lack of timely notice beyond stating the issue would be taken "directly to Safety."

Employer's safety manager testified he first became aware of Employee's right hand injury in a telephone call he placed to Employee sometime after April 7, 2020, upon learning Employee "had called and wanted to talk to someone about his situation." The safety manager testified he asked Employee whether "it was in any way job related" and that Employee said he "had no idea how it got hurt," clarifying that the reference to "it" meant Employee's right hand. He testified he did not complete an injury report because "there was nothing ever reported," and that if Employee had reported an injury, Employer "would have brought him in" and "assessed the injury." The safety manager did not offer direct testimony addressing whether or how Employer was prejudiced by Employee's untimely notice of the work injury beyond his testimony that Employee would have been "brought in" and his injury "assessed."

Employer's business manager at the time of Employee's alleged injury also testified, stating he was not involved in the process when employees report work-related injuries and that if an employee had come to payroll, to him, or to any of his clerks to report an injury, "we immediately sent them to the safety department." He testified he spoke with Employee when he came into the office to pick up his paycheck and that Employee was holding his hand against his chest, adding that Employee's hand "was very swollen, kind of looked like a club." He stated he could not say when the conversation took place but that "[i]t would have been within a few days of him going to the ER or hospital." He further testified that Employee called in "to our craft worker sick line" and left a message that Employer's office manager indicated "could be something like an injury," prompting the safety manager and him to call Employee. Similar to the safety manager's testimony, the business manager testified Employee was asked directly whether "this was a work-related injury," and that Employee said he did not know how it happened. The business manager testified that had Employee reported a work injury "that would have been the point in time where [he] would have stepped out of that incident," and it would have gone to safety and whatever safety's proper protocols were.

Employer's business manager also testified Employee asked for a layoff so he could file for unemployment. He testified he was inclined to help Employee "so [he] went to the next step" of involving the human resources team and was told "we need to put [Employee] through an ADA evaluation process." He explained the process and stated that after the HR department initiated the process and received information indicating there would be a lengthy separation period during which Employee would not be able to work, "we did ultimately agree we would be able to just mutually separate employment." He explained that had there been an indication Employee was unable to work because of a work-related injury, "we would not have gone through that process" and as soon as a work injury is reported to him "it went directly through Safety."

While the record does not support the statement in the trial court's order that Employer "offered no evidence regarding what prejudice it suffered concerning investigating the incident because of [Employee's] untimely notice," we conclude from our

6

review of the record that the preponderance of the evidence shows that the extent of any prejudice to Employer's ability to investigate the circumstances of Employee's alleged injury and to direct his medical care was insufficient to bar Employee's claim.

*Likelihood of Establishing a Compensable Injury*

Although the burden rests on an employee to establish the elements of his or her claim for benefits by a preponderance of the evidence, a workers' compensation judge may "hear disputes over issues . . . concerning the provision of temporary disability or medical benefits on an expedited basis and enter an interlocutory order upon determining that the injured employee would likely prevail at a hearing on the merits." Tenn. Code Ann. § 50-6-239(d)(1). Employer argues on appeal that the evidence Employee presented in the expedited hearing was not sufficient for the court to determine that he is likely to prevail at a hearing on the merits.

Employer asserts Employee "gave several conflicting statements under oath as to when and how the alleged cut on his thumb occurred," adding that Employee "has a recent history of untruthfulness as evidenced by his prior criminal history including felony conviction[s] . . . in November 2020." Further, Employer asserts the trial court "discounted medical evidence from [Employee's] primary treating provider, [the nurse practitioner], from just one day *after* the alleged accident," and that the trial court "discounted the actual medical reports from Dr. Pankiw, which were prepared close in time to [the doctor's] actual physical examinations of [Employee] as opposed to statements made in an affidavit more than five months later."

The trial court concluded that Employee "credibly testified that he cut his thumb at work," and that "Ms. Wix likewise credibly testified that she put peroxide on the cut on April 7." The court additionally credited Employee's testimony that he cut his thumb "while shoveling sludge," and "the fact that the nurse [practitioner] noted that she did not see a laceration while examining [Employee] on April 8 does not rebut this testimony." The trial judge had the opportunity to observe both Employee's and Ms. Wix's demeanor and to hear their in-court testimony; accordingly, we must give considerable deference to factual findings made by the trial court concerning whether Employee cut his thumb while shoveling sludge on April 7. *Madden*, 277 S.W.3d at 898. Moreover, the trial court gave little weight to the supervisor's testimony that Employee did not work in the floc trailer on April 7. Indeed, when the supervisor was asked, "[y]ou're not sure" if Employee was cleaning the floc trailer that day, he responded, "No. No. Not from a year ago." Although Employee made inconsistent statements as to when and how he believed the cut on his thumb occurred and admitted recent felony convictions, the greater weight of the evidence supports the trial court's credibility determinations.

Moreover, the trial court concluded the reference in the nurse practitioner's report about a diagnosis of gout in Employee's right hand on March 30, 2020 was "incorrect,"

noting the report said Employee's right thumb problem "started 'yesterday,' and that his 'ankle since got better' after he obtained the medicine prescribed in the March 30 visit." The trial court further stated "[t]he fact that the nurse [practitioner] noted that she did not see a laceration while examining [Employee] on April 8 did not rebut [Employee's] testimony" that he cut his thumb while shoveling sludge.

Employer asserts that Dr. Pankiw's reports do not mention a possible work-related injury until May 20, 2020, when the doctor's report stated Employee "reported a cut while unloading a freezer." Employer asserts this report should not be discounted in favor of "statements made in an affidavit more than five months later," adding that "[i]f the court is to rely on some of Dr. Pankiw's reports and opinions, it should rely on all of them." Employee denied telling Dr. Pankiw he cut his hand by unloading a freezer and testified he had "never seen a freezer truck at [Employer]." Employee's supervisor testified that Employer does not deal with freezer trucks and that no member of his crew would be unloading any type of freezer or freezer truck. The record does not include any explanation for the statement in Dr. Pankiw's report that Employee cut his hand while unloading a freezer. While we do not afford the same deference to the trial court's findings that are based on documentary evidence as we do those based on in-person testimony, we conclude the preponderance of the evidence does not support a finding that Employee sustained an injury while unloading a freezer. *See Goodman*, 2018 Tenn. LEXIS 8, at *6.

Dr. Pankiw's affidavit expressed his medical opinion that Employee's "cuts, infection and sequelae of infection, arose primarily out of and in the course and scope of employment . . . and that the employment contributed to more than fifty percent (50%) in causing [Employee's] right upper extremity injuries and the need for the initial and subsequent surgical procedures [he] performed." Employer presented no expert opinion rebutting Dr. Pankiw's affidavit or addressing causation. We conclude the preponderance of the evidence supports the trial court's determination that Employee will likely prevail at trial in establishing that his right hand injury arose primarily out of and in the course and scope of his employment.

**Conclusion**

For the foregoing reasons, we affirm the trial court's expedited hearing order awarding medical benefits and remand the case. Costs on appeal are taxed to Employer.



**TENNESSEE BUREAU OF WORKERS' COMPENSATION
WORKERS' COMPENSATION APPEALS BOARD**

| | |
|---|---|
| Sebastian Mitchell ) | Docket No. 2020-01-0494 |
| ) | |
| v. ) | State File No. 46913-2020 |
| ) | |
| AECOM d/b/a Shimmick ) | |
| Construction, Inc., et al. ) | |
| ) | |
| ) | |
| Appeal from the Court of Workers' ) | |
| Compensation Claims ) | |
| Thomas L. Wyatt, Judge ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 20th day of August, 2021.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Stephanie Rockwell<br>Melissa J. Cruz | | | | X | stephanie@speed-seta.com<br>melissa@speed-seta.com |
| Brent Burks<br>Laura Winchester | | | | X | brentburks@mcmahanlawfirm.com<br>laura@mcmahanlawfirm.com |
| Thomas L. Wyatt, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

*Olivia Yearwood*

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov