



FILED
Dec 15, 2022
10:58 AM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Arlene Ernstes | ) | Docket No. 2020-07-0617 |
| | ) | |
| v. | ) | State File No. 66407-2020 |
| | ) | |
| Printpack, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard December 2, 2022 |
| Compensation Claims | ) | in Nashville, Tennessee |
| Amber E. Luttrell, Judge | ) | |

---

**Reversed in Part, Vacated in Part, and Remanded**

---

This dispute concerns an employee who was exposed to loud machinery over the course of thirty-three years of employment. Although the employer provided annual hearing tests, the employee testified she was not aware she may have work-related hearing loss until meeting with an attorney in 2020, after which she notified her employer of her alleged hearing loss. The employer denied her claim, asserting the employee knew or should have known she had a work-related hearing loss, at the latest, when she was first diagnosed with a hearing loss in 2019. Following a compensation hearing, the trial court found the employee's testimony to be credible regarding when she knew or reasonably should have known she sustained work-related hearing loss, that her notice was timely, and that her claim was not barred by the statute of limitations. The trial court also found that the employee's hearing loss arose primarily out of and in the course and scope of her employment and awarded permanent disability benefits and future medical benefits made reasonably necessary by the employee's injury. Finally, the court ordered the employer to provide a panel of physicians for the employee to select an authorized treating physician for future care. The employer has appealed. Upon careful consideration of the record in this case, we reverse the trial court's finding that the employee provided timely notice, vacate the trial court's order for medical and disability benefits, and remand the case.

Judge Pele I. Godkin delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Meredith B. Weaver joined.

Gregory H. Fuller and Adam C. Brock-Dagnan, Knoxville, Tennessee, for the employer-appellant, Printpack, Inc.

1

Jeffrey Boyd, Jackson, Tennessee, for the employee-appellee, Arlene Ernstes

**Factual and Procedural Background**

Arlene Ernstes ("Employee") worked for thirty-three years in various positions for Printpack, Inc. ("Employer") until 2016. Employee testified that she "did everything in the plant . . . [f]rom loading trucks to maintenance, cleaning the dyes, and everything." Most of her time at work was spent on the plant floor around loud machines, where, although Employee wore hearing protection, she testified that she could still hear loud noises. Employer performed annual hearing screens during her employment, but Employee testified she never received copies of her test results and never had the test results explained to her. Instead, Employee was provided notes in her mailbox at work indicating whether she passed or failed a test. She contended that noise exposure while working for Employer resulted in binaural hearing loss, with an effective date of injury of March 19, 2016, her last date of employment.[1]

In December 2019, Employee was evaluated by Dr. Karl Studtmann, an ear, nose, and throat physician, and his physician's assistant at West Tennessee ENT Clinic. Employee testified that she saw Dr. Studtmann in 2019 for dizziness and ear pain. Medical records reflect Employee provided a history of "decreased hearing in both ears for many years now. She states that it has progressively gotten worse. She denies any sudden hearing changes or hearing worse in one ear than the other." Employee reported she had a sinus infection a few weeks prior to her visit and was told she had fluid in her ears. She had experienced "some mild dizziness upon standing" that would eventually pass and noted this had almost completely resolved. Employee was diagnosed with bilateral sensorineural hearing loss and was referred to West Tennessee Speech and Hearing for consultation regarding hearing aid use. She was advised to return to the clinic if the dizziness returned or if she encountered any other issues.

Employee testified that she first noticed gradual hearing problems when she had to regularly turn up the volume on her television. Employee's granddaughters suggested she get hearing aids, and Employee stated that she thought her hearing issues were related to her age. Employee contended at trial that the first time she associated her hearing loss with her employment was while attending a meeting with her husband and his attorney in September 2020. Following this meeting, Employee, through counsel, sent notice of her injury to Employer, and, on November 17, 2020, Employee filed a petition for workers' compensation benefits.

In June 2021, Employee returned to Dr. Studtmann with complaints of hearing loss, which she then believed was work-related. Employee noted that her hearing had

---

[1] For purposes of this appeal, it is undisputed that Employee's only exposure to loud noises occurred while working for Employer on its premises.

gotten worse and that she was having difficulty with background noise, high-pitched voices, and understanding what other individuals were saying when she could not see their faces. An audiogram revealed "downsloping sensorineural hearing loss, starting in the mild range and dropping to the severe range." Dr. Studtmann noted the study was nearly identical to the audiogram that had been performed in 2019. He opined that her employment was "likely the etiology for the change in hearing while she was employed there" and assigned a whole person impairment of ten percent based upon the American Medical Association's Guides to the Evaluation of Permanent Impairment, Sixth Edition.

On November 15, 2021, Employee was seen by Dr. Rande Lazar at the request of Employer for an independent medical examination. After undergoing a hearing test, Employee was diagnosed with "sloping sensorineural hearing loss probably in combination of noise exposure at work of many years on the job and from aging." Dr. Lazar noted Employee was wearing hearing aids and stated she could return to see him as needed.

On November 17, 2021, the parties took Dr. Studtmann's deposition, during which he testified that, based upon Employee's history and her test results, Employee had "findings consistent with a noise-induced hearing loss and given that she has progression of that noise-induced hearing loss over that time period, it's likely related to noise exposure that she was receiving during that time period." Dr. Studtmann testified within a reasonable degree of medical certainty that this was the primary cause of Employee's hearing damage and that she would retain a ten percent impairment to the whole body.

When questioned about Employee's office visit in 2019, Dr. Studtmann testified that Employee presented that day with complaints of dizziness and hearing loss and explained that sometimes dizziness can be associated with hearing loss. Dr. Studtmann confirmed Employee's audiological exam in 2019 revealed downsloping high frequency sensorineural hearing loss and mild low frequency sensorineural hearing loss. When questioned with regard to how the results from 2019 corresponded with the audiological exam conducted in 2021, Dr. Studtmann responded:

A:     The pattern [is] very similar.

Q:     I mean, you would go in so far to say they're nearly identical. Correct?

A:     Yes, sir.

Dr. Studtmann testified that he discussed Employee's hearing loss during her 2019 visit but didn't "recall that we specifically discussed the etiology for her hearing loss at that point." Dr. Studtmann testified that Employee's hearing loss was significant but noted that individuals can also have "natural hearing loss that is significant." He

reiterated that the purpose of the second visit was to discuss the etiology of Employee's hearing loss, and this was different from the purpose of Employee's initial visit in 2019.

At the trial in August 2022, Employee was questioned regarding her prior deposition testimony, the 2019 hearing evaluation, and her beliefs concerning the cause of her hearing loss. Employer cited this testimony in support of its assertion that Employee was not entitled to workers' compensation benefits because she failed to give proper notice and her claim was time-barred. Following the trial, the court issued an order in which it determined that Employee provided timely notice of her work-related hearing loss to Employer in late 2020. As part of its analysis, the trial court noted that Employer's argument conflated "[Employee's] knowledge that she had hearing loss with knowledge that it was work-related." The court determined Employee was credible, noting her medical records and hearing screens supported her testimony. It also concluded that although employee did not file her petition within one year of her last day worked, notice was timely by application of the "discovery rule," which suspended the notice requirement and tolled the statute of limitations until such time that Employee knew or reasonably should have known of her work-related injury. Under the facts presented, including the causation opinion of Dr. Studtmann, the court concluded she had proven her hearing loss arose primarily out of and in the course and scope of her employment. The court awarded Employee permanent partial disability benefits based upon the impairment rating provided by Dr. Studtmann and lifetime future medical benefits. The court also ordered Employer to provide a panel of physicians for Employee to select an authorized treating physician for future medical care. Employer has appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2022). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2022).

**Analysis**

Employer raises a single issue on appeal: whether the trial court erred in finding that Employee provided Employer timely notice of a gradually occurring injury as required by Tennessee Code Annotated section 50-6-201(b).[2]  In its argument on appeal, Employer asserts that the facts and circumstances are such "that a reasonable person in Employee's situation should have known that their hearing-related issues were work related years prior to Employee's notice to Employer."  Employee contends that she attributed her hearing loss to old age and provided timely notice once she discovered the potential causal connection between her hearing loss and her employment.

Because Employee alleges her hearing loss was due to cumulative trauma, certain conditions set forth in Tennessee Code Annotated section 50-6-201(b) must be satisfied:

> In those cases where the injuries occur as the result of gradual or cumulative events or trauma, then the injured employee or the injured employee's representatives shall provide notice of the injury to the employer within thirty (30) days after the employee:
>
> (1)  Knows or reasonably should know that the employee has suffered a work-related injury that has resulted in permanent physical impairment; or
>
> (2)  Is rendered unable to continue to perform the employee's normal work activities as the result of the work-related injury and the employee knows or reasonably should know that the injury was caused by work-related activities.

Thus, the determinative issue for our consideration is whether the trial court erred in concluding Employee provided notice within thirty days of when she knew or reasonably should have known that her hearing loss was work related and permanent.[3]  As such, we must determine when Employee knew or should have known that her hearing loss was causally related her employment.  Employer maintains that notice was not timely and, in support of this contention, asserts it provided yearly hearing tests for Employee, the results of which were provided to her.  Employer also notes it required

---

[2] Although Employer raised issues regarding both timely notice and statute of limitations at the compensation hearing, the only issue identified on appeal was notice pursuant to Tennessee Code Annotated section 50-6-201(b).  Therefore, we need not determine in this appeal whether Employee's petition for benefit determination was timely filed.

[3] As the trial court noted, the thirty-day notice period is applicable to injuries occurring between July 1, 2014 and June 30, 2016.  Ms. Ernstes's date of injury was March 19, 2016; therefore, the thirty-day notice rule applies.

5

Employee to wear hearing protection and emphasizes it is undisputed that her only exposure to loud noise was at the workplace. Finally, Employer points to Employee's office visit with Dr. Studtmann in 2019, when Employee was advised of her binaural hearing loss but did not, at that time, question the doctor regarding its etiology.

Conversely, Employee asserts there is no evidence Employer ever provided her with hearing test results, recommendations for medical treatment, or an explanation of the results of her hearing tests. Employee also notes that although she was seen by Dr. Studtmann in 2019 for complaints of dizziness, he never discussed the cause of her hearing loss with her until 2021, *after* she had provided notice to Employer of her condition. In her brief on appeal, Employee contends the trial court's analysis was correct in its "refusal to charge Employee, a non-physician, with knowledge that [her] hearing loss was work-related."

With respect to the issue of when Employee knew or reasonably should have known her hearing loss was causally related to work, based on our review of the record, including specific testimony from Employee at trial, we conclude that the preponderance of the evidence supports a different determination than that made by the trial court. At trial, Employee was asked to read an excerpt from her March 19, 2021 deposition in which she testified that she first noticed her hearing loss "three or four years ago."

After reading this excerpt, Employee was asked if she sought medical treatment after first noticing her condition. In response, Employee testified she went to West Jackson Hearing and had a hearing test performed. She then was asked:

Q:     Okay. Do you remember doing any hearing screening?

A:     Yeah, I did the screening and then he checked my ears.

Q:     And what was the conclusion - - or what were the findings that were provided to you at that particular - -

A:     That I couldn't hear.

Q:     Okay. So, they informed you you had a hearing loss?

A:     Yes.

Q:     Was it pretty severe?

A:     Yes.

Q:     Okay. Did you ask them why?

6

A:	No.

Q:	And why is that?

A:	*I knew why. All the loud noises and everything* with . . . .

Q:	Okay. So, in 2019, you knew why you had hearing loss.

A:	*I figured that was why.*

Q:	So, you - - okay. So, you did not think it was because of your age?

A:	Yeah, I figured it was my age until I - - until he - - when he did the test and he was telling what it was, I figured it was my age. *And then, I figured, no, it was all the noise.*

(Emphases added.)

Based upon Employee's trial testimony, we conclude that during her 2019 office visit with Dr. Studtmann, she knew, or reasonably should have known, that her hearing loss was permanent and was caused by noise exposure while working for Employer. Therefore, we conclude notice of Employee's alleged work-related hearing loss, which was not provided to Employer until late 2020, was not timely provided pursuant to Tennessee Code Annotated section 50-6-201(b).[4]

Although we conclude Employee's notice was not timely, the inquiry does not end there. Tennessee Code Annotated section 50-6-201(a)(1) also provides, in relevant part:

No compensation shall be payable under this chapter, unless written notice is given to the employer within thirty (30) days after the occurrence of the accident, unless reasonable excuse for failure to give the notice is made to the satisfaction of the tribunal to which the claim for compensation may be presented.

Because the trial court concluded Employee had provided timely notice, it did not reach the issue of whether there was a reasonable excuse for late notice. Having found that

---

[4] Employee argues that Employer should be charged with actual knowledge of her work-related hearing loss because it required that she wear hearing protection and undergo regular hearing tests. Without any evidence in the record to suggest that Employer had retained a medical professional with appropriate expertise to conduct the tests *and* relate the results of those tests to Employer, we decline to impute knowledge to an employer that an employee's hearing loss was work-related based merely upon the fact that it required employees to wear hearing protection and to undergo hearing tests.

7

notice was not timely, however, we must vacate the remaining aspects of the trial court's order and remand this case for the trial court to consider whether there was a reasonable excuse for Employee's failure to provide timely notice.

In addition, if the trial court determines Employee failed to provide a reasonable excuse for her late notice, it must then consider whether and to what extent Employer was prejudiced by Employee's failure to provide timely notice within the framework of Tennessee Code Annotated section 50-6-201(a)(3), which provides:

> No defect or inaccuracy in the notice shall be a bar to compensation, unless the employer can show, to the satisfaction of the workers' compensation judge before which the matter is pending, that the employer was prejudiced by the failure to give the proper notice, and then only to the extent of the prejudice.

The Tennessee Supreme Court has held that "[t]he reasons for the requirement as to notice of injury are to give the employer an opportunity to make an investigation while the facts are accessible and also to enable [the employer] to provide timely and proper treatment for the injured employee." *Aetna Casualty & Surety Co. v. Long*, 569 S.W.2d 444, 449 (Tenn. 1978). Section 50-6-201(a)(3) clearly places the burden on the employer to show "that the employer was prejudiced by the failure to give proper notice." Tenn. Code Ann. § 50-6-201(a)(3). Moreover, even if prejudice is shown, an employer is entitled to relief "only to the extent of his prejudice." *Id*.

Here, we conclude the preponderance of the evidence establishes that Employee knew or, at a minimum, believed that her hearing loss was work related at the time of her appointment with Dr. Studtmann in 2019. Thus, we reverse the trial court's finding that Employee provided timely notice of her work-related hearing loss, vacate the trial court's order for disability and medical benefits, and remand the case to the trial court to consider whether Employee had a reasonable excuse for her failure to provide timely notice and, if no reasonable excuse is provided to the satisfaction of the court, whether and to what extent Employer was prejudiced by the failure to give proper notice.

## Conclusion

For the foregoing reasons, we reverse in part and vacate in part the trial court's order, and we remand the case for further proceedings consistent with this opinion. Costs on appeal are taxed to Employer.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Arlene Ernstes | ) | Docket No. 2020-07-0617 |
| | ) | |
| v. | ) | State File No. 66407-2020 |
| | ) | |
| Printpack, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard on December 2, 2022 |
| Compensation Claims | ) | in Nashville, Tennessee |
| Amber E. Luttrell, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 15th day of December, 2022.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Adam C. Brock-Dagnan | | | | X | acbrock-dagnan@mijs.com<br>ghfuller@mijs.com |
| Jeffrey P. Boyd | | | | X | jboyd@borenandboyd.com<br>scallison@borenandboyd.com |
| Amber E. Luttrell, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

*Q.Yearwood*

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov