FILED
Mar 24, 2026
11:35 AM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Ronnie Slater | Docket No. 2020-01-0512 |
| v. | State File No. 49580-2020 |
| ADECCO USA, Inc., et al. | |

Appeal from the Court of Workers'
Compensation Claims
Thomas L. Wyatt, Judge

---

### Affirmed and Remanded

---

In the second interlocutory appeal in this case, the employee questions the trial court's order denying his request that a nurse case manager be assigned to his case and that he be awarded attorneys' fees, costs, and penalties for the employer's delay in scheduling medical treatment recommended by the authorized physician. The medical treatment in question had been completed approximately two months prior to the trial court's order and approximately a year after being recommended. The trial court, apparently unaware that the treatment in question had been provided, determined in a decision on the record that the employee will likely prevail at trial in proving his entitlement to the medical treatment but would not likely prevail in establishing his entitlement to the remaining relief he sought. As a result, the court ordered the employer to provide treatment that had already been provided, and the employee has appealed. Having carefully reviewed the record, we affirm the trial court's decision and remand the case.

Judge Pele I. Godkin delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Meredith B. Weaver joined.

Carmen Y. Ware, Chattanooga, Tennessee, for the employee-appellant, Ronnie Slater

Charles E. Pierce, Knoxville, Tennessee, for the employer-appellee, ADECCO USA, Inc.

### Factual and Procedural Background

In our opinion in the first appeal of this case, we summarized the factual and procedural history, in pertinent part, as follows:

Ronnie Slater ("Employee"), a 58-year-old resident of Chattanooga, was employed by ADECCO USA, Inc. ("Employer"), a staffing agency, and was assigned to work at a company in Georgia. On January 20, 2020, Employee was helping maneuver large rolls of material at work when he felt a pop in his back and experienced pain radiating down his left leg. He reported the accident to Employer and eventually came under the care of Dr. Alex Sielatycki, who diagnosed an L5-S1 disc herniation with radiculopathy. Employee underwent surgical treatment of this condition in September 2020. At a follow-up visit in November 2020, Employee reported significant improvement in his low back pain but complained of persistent pain in his left leg. Nevertheless, Dr. Sielatycki concluded he was fully recovered from the lumbar surgery and should proceed with physical therapy. According to Dr. Sielatycki's report, Employee expressed interest in pain management treatment, and Dr. Sielatycki made a referral for that treatment.

. . . .

[I]n late January 2021, an incident occurred at work when [Employee] was reaching and lifting some empty boxes and tripped over a pallet and fell backwards landing on his back. Employee reported that he experienced more soreness in his lower and upper back. He also reported discomfort in his left leg, but there was no specific reference to the left knee. . . . [Dr. Sielatycki] diagnosed ongoing troubles with back pain and concluded the recent fall had merely exacerbated his underlying condition of lumbar spondylolisthesis, but he offered no diagnosis concerning the left knee.

. . . .

In a September 2021 report, Employee complained of low back pain and reported he was taking hydrocodone as prescribed by a pain management specialist. Employee advised Dr. Sielatycki that his symptoms were well managed with the pain medication, but he also reported residual numbness and weakness in his left foot. Dr. Sielatycki again diagnosed lumbar radiculopathy and stated that, "[f]rom a back standpoint, I believe he is at maximum medical improvement." Dr. Sielatycki ordered a functional capacity evaluation. He also stated, "[a]s far as the knee pain is concerned, I am going to refer him over to one of our knee specialists to evaluate that joint." He did not offer any opinion in that report regarding any left knee diagnosis or the cause of any left knee dysfunction.

. . . .

2

In its May 28, 2025 expedited hearing order, the trial court concluded that Employee had not come forward with sufficient evidence indicating that the alleged January 2021 fall at work was the primary cause of the need for additional left knee treatment. . . . As a result, the court concluded that Employee had not shown a likelihood of prevailing on that issue at trial, and it denied his request for an order compelling additional treatment for the left knee.

*Slater v. ADECCO USA, Inc.*, No. 2020-01-0512, 2025 TN Wrk. Comp. App. Bd. LEXIS 35, at *2-10 (Tenn. Workers' Comp. App. Bd. Aug. 20, 2025) (some internal quotation marks omitted). In his appeal of that order, Employee asserted the trial court erred in declining to order Employer to provide additional medical treatment, including surgery to his left knee. We affirmed the trial court's order and remanded the case.

Approximately one month later, on September 15, Employee filed another request for an expedited hearing asking the trial court to order Employer to authorize an ablation procedure ordered by a treating physician, Dr. Steven Musick, and to provide nurse case management services as recommended by that same physician. Employee also sought penalties, attorneys' fees, and costs he asserted were warranted due to Employer's delays in providing medical treatment. Employee sought a decision on the record with no evidentiary hearing. Employer did not oppose that request, and, on October 20, the court entered an order directing Employee to "identify all evidence other than that attached to his request" upon which he intended to rely for the court to make its decision. In a subsequent docketing notice dated October 29, the court found it required "no additional information to determine whether [Employee] is likely to prevail at a hearing on the merits of the issues in the hearing request" and would, therefore, "decide the issues on a review of the written materials in the record." After the expiration of the briefing period, the court issued an order on December 31, 2025, ordering Employer to "take all reasonable steps to authorize and schedule the [spinal ablation] at the earliest date" but denying "all other requested relief."[1] Employee has appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2025). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to credibility determinations made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "when it comes to deposition

---

[1] After Employee's notice of appeal was filed, Employer advised the court that the ablation procedure that was the subject of the dispute had been performed in October 2025, approximately two months prior to the entry of the court's expedited hearing order.

testimony, an appellate panel is in the same position as the trial court to make credibility determinations." *Edwards v. Peoplease, LLC*, No. W2024-01034-SC-R3-WC, 2025 Tenn. LEXIS 514, at *18 (Tenn. Dec. 22, 2025). Thus, when medical proof is presented by deposition, "the reviewing court may draw its own conclusions about the weight and credibility of the expert testimony." *Id.* Moreover, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2025).

**Analysis**

In his brief on appeal, Employee presents two issues for review: (1) whether the court erred in finding he was unlikely to prevail at trial in establishing his entitlement to nurse case management services; and (2) whether the court erred in declining to award attorneys' fees, costs, and/or penalties against Employer. In response, Employer contends it is not required to provide nurse case management services upon request by Employee because nurse case managers perform an administrative function rather than a treatment function, and the provision of those services is Employer's prerogative as provided in Tennessee Code Annotated section 50-6-123. Employer also argues that the authorized physician's suggestion that Employer provide this service clearly contemplates that it is within Employer's discretion. With respect to attorneys' fees, costs, and/or penalties, Employer maintains that it is not the party responsible for delaying the medical treatment and that, therefore, attorneys' fees, costs, and/or penalties are not appropriate.

*Nurse Case Management*

With respect to nurse case management services, Employee argues that nurse case management is within the realm of medical services that can be ordered by an attending physician. In support of his position, he points to Tennessee Code Annotated section 50-6-204(a)(1)(A), which provides that an employer "shall furnish, free of charge to the employee, such . . . nursing services . . . as ordered by the attending physician." However, Tennessee Code Annotated sections 50-6-122 and -123 govern the case management system available in workers' compensation cases for the "coordinat[ion of] the medical care services provided to employees." Tenn. Code Ann. § 50-6-123(a) (2025). Subsection 123(b) authorizes the Bureau of Workers' Compensation to establish a system of "[m]inimum standards" and "certification" procedures for case managers. More pertinent to the present case, subsection 123(e) states that "[n]othing in this section shall *prevent* an employer from establishing its own program of case management." Tenn. Code Ann. § 50-6-123(e) (emphasis added). Yet, there is no language in sections 122 or 123 that *mandates* the use of nurse case management.

Moreover, as Employer points out, there is a distinction between nursing services in the context of medical treatment, as contemplated in subsection 50-6-204(a)(1)(A), and nurse case management services as contemplated in section 50-6-123 and applicable regulations. Tenn. Comp. R. and Regs. 0800-02-07-.02 uses permissive language when discussing an employer's provision of nurse case management services. For instance, the first line of the regulation states that "[a]n insurer who provides workers' compensation insurance . . . *may* provide for a system of case management." Tenn. Comp. R. & Regs. 0800-02-07-.02(1) (2025) (emphasis added). Further, "[i]t shall be the responsibility of every employer *who elects to provide cases management services*" to provide certain information regarding those services to the injured worker. Tenn. Comp. R. & Regs. 0800-02-07-.02(3) (emphasis added). Such language is directly at odds with Employee's position that case management is a form of medical treatment that can be ordered by an attending physician as contemplated in subsection 50-6-204(a)(1)(A). Furthermore, although there is a requirement that "[a]n employer . . . shall provide case management services in all cases where an employee has suffered a catastrophic injury," Tenn. Comp. R. & Regs. 0800-02-07-.03(1), for non-catastrophic injuries, the rule states that "if and when a nurse case manager is assigned," there should be an initial meeting within twenty-one calendar days of the assignment. Tenn. Comp. R. & Regs. 0800-02-07-.03(2).[2] The wording of these regulations is clear that in all but catastrophic injuries, the provision of nurse case management services is permissive and is not required for proper handling of the claim.

In addition, nurse case managers' actions are governed by Tenn. Comp. R. and Regs. 0800-02-07-.04, which provides a list of permissible and prohibited actions for nurse case managers. Although nurse case managers may be involved in the development of a treatment plan in conjunction with the authorized physician, none of the duties assigned to nurse case managers involve *providing* that treatment. Thus, we agree with Employer that nurse case management is an administrative function distinct from the provision of "medical and surgical treatment, medicine, . . . [and] such nursing services or psychological services . . . made reasonably necessary by accident," as mandated by section 204(a)(1)(A). In short, we conclude the use of nurse case management services is at an employer's discretion unless it is a catastrophic injury.

Next, Employee argues that Tenn. Comp. R. and Regs. 0800-02-07-.03(3) mandates the use of nurse case management in circumstances other than catastrophic injuries. That regulation states, "[I]t is appropriate to consider case management services if . . . medical expenses over [ten thousand dollars], an inpatient hospitalization, or lost work time over three (3) months is anticipated." However, as the trial court pointed out in its order, the language of this rule (*i.e.*, "appropriate to consider") does not mandate a nurse case manager to be used even when one or more of those criteria are met. In short, Employee

---

[2] "Catastrophic injuries" are defined as those that cause severe paralysis, amputation, certain closed head injuries, significant burns, and total or industrial blindness. Tenn. Comp. R. & Regs. 0800-02-07-.01(7).

has provided no authority to support his position that an employer is required to provide a nurse case manager when an employee requests it or a treating physician recommends it, and we are aware of none.[3]

Finally, Employee argues that in circumstances where an authorized physician orders the provision of nurse case management services, the need for those services is presumed to be reasonable and medically necessary as provided in Tennessee Code Annotated section 50-6-204(a)(3)(H), which then shifts the burden to the employer to disprove the medical necessity of case management. We are unpersuaded. That section specifically states that "[a]ny *treatment* recommended by [an authorized] physician . . . shall be presumed to be medically necessary." (Emphasis added.) As we concluded above, however, nurse case management services are not medical treatment. Moreover, Dr. Musick wrote that he was "sending this order to his insurance carrier to see if they will provide a Nurse Case Manager to come with him to office visits." The phrasing of this request makes clear Dr. Musick's request was a recommendation, not an order for treatment, and the decision to involve a nurse case manager rested with Employer. Thus, we agree with the trial court that Employee is not likely to prevail on this issue at trial.

*Attorneys' Fees and Costs*

Employee next argues that attorneys' fees should be assessed due to Employer's unreasonable delay in providing the medical treatment recommended by the authorized physician. Employer asserts this issue is now moot because the procedure has been performed. Employer also argues that it was not responsible for the delay, which it maintains was due to miscommunication between physicians. Tennessee Code Annotated section 50-6-226(d)(1) provides that, to qualify for an award of additional attorneys' fees, an employee must show either that the employer did not provide medical treatment as ordered by a court or that the employer unreasonably failed to provide benefits timely.

Here, the court considered the information contained in the record concerning Employer's efforts to schedule the procedure and concluded that Employer's actions were not the sole cause of the delay and were not unreasonable. The trial court's factual findings are presumed correct, *see* Tennessee Code Annotated section 50-6-239(c)(7), and Employee has not shown by a preponderance of the evidence that the trial court erred in declining to award attorneys' fees and costs or to provide a referral for penalties.

---

[3] We stress, however, that nothing in this opinion is intended to minimize the important contributions nurse case managers can make in workers' compensation cases, and effective nurse case managers can have a substantial positive impact on both the coordination of medical care services and the overall costs of such services.

**Conclusion**

For the foregoing reasons, we affirm the decision of the trial court and remand the case. Costs on appeal have been waived.